■ ELIZABETH M. MERWIN et al., Appellants, v DONNA McCANN, Defendant, and ERIC DUEMLER et al., Doing Business as MOHAWK VALLEY ESTATES, Respondents.—Yesawich, Jr., J. Appeal (1) from an order of the Supreme Court (Walsh, Jr., J.), entered July 17, 1986 in Montgomery County, which granted the motion of defendants Eric Duemler and Marie Duemler for summary judgment dismissing the complaint against them, and (2) from the judgment entered thereon.

Plaintiffs, Elizabeth Mae Merwin (hereinafter Merwin) and her husband, derivatively, seek to recover damages for injuries Merwin suffered when she was attacked and allegedly bitten by two German Shepherd dogs owned by defendant Donna McCann. At the time, plaintiffs and McCann were tenants, occupying adjacent lots, in a trailer park owned and operated by defendants Eric Duemler (hereinafter Duemler) and Marie Duemler. The incident occurred on April 13, 1984 at about 9:30 P.M. while Merwin was walking her two small dogs in the yard in front of plaintiffs' trailer. McCann was apparently moving her dogs, which were normally kept tied during the day, from her truck when they broke away from her and attacked the hapless Merwin and her dogs.

Testimony brought out during Duemler's examination before trial established that in September 1983, when he first rented space in the trailer park to McCann, he knew that she intended to keep a police dog to protect her at the trailer. Although Duemler did not see the dog that day, his subsequent observation of the animal—it was 2½ feet high and weighed approximately 65 pounds—confirmed its purpose was that of a protector; indeed, he commented, "Just to look at him you can tell."

Duemler agreed McCann could keep the dog, but did not inquire as to its past character, particularly its proclivity, if any, to be vicious. He did, however, give McCann the trailer park's regulations concerning dogs. They provided:

"¶ 13. All dogs and pets must be kept on your own lot and walked in designated areas. Any legitimate pet complaints can

mean eviction from park. All pet feces must be picked up and disposed of in a sanitary manner by pet owners.

"¶ 14. All fences, dog runs, pet yards, etc., must be approved by management."
An additional $5 per month was charged each tenant, including McCann, per dog in an effort to discourage dog ownership. Approximately one month after leasing the space, McCann acquired another German Shepherd from the same litter and paid the extra $5 monthly charge this occasioned.

Thereafter, the Duemlers received complaints concerning the dogs' barking. They also received a complaint from a newspaperwoman who made deliveries in the trailer park that one of the dogs "lunged" at her while on its chain. This incident was allegedly reported to Duemlers' agents, who purportedly "laughed" at her. In a sworn statement, this witness further declared "that the dog came after me every time that I delivered the newspaper. I would then make a delivery to the park office and complain about the dog being dangerous. I had * * * conversations with Eric and Marie Duemler about the dog. Mr. Duemler told me there was nothing he could do."

Plaintiffs' complaint against the Duemlers, as amplified by their bill of particulars, alleges that the trailer park owners breached a duty owed to the plaintiffs, as tenants, to protect them, and identified the Duemlers' negligence as consisting of, *inter alia*, their failure to exercise control over the dogs or to restrain or limit their activities in any way. The Duemlers moved for, and were granted, summary judgment dismissing the complaint against them, prompting this appeal.

In *Strunk v Zoltanski* (62 NY2d 572), the Court of Appeals concluded that a landlord who, prior to leasing premises has knowledge that the prospective tenant will keep a dog thereon which has vicious propensities, has a duty to take such reasonable precautions as lie within the landlord's control to protect third persons from foreseeable injuries *(supra,* at 576).

The references to Duemler's deposition and the newspaperwoman's statement, already recited, present factual questions respecting whether the dog McCann intended and did indeed keep on the premises had vicious tendencies and, if so, whether the Duemlers knew or should have known this.

And the record also discloses a triable question of fact as to the other *Strunk* requisite which must be met before an action can be maintained by a tenant against a landlord where the tenant has been bitten by another tenant's dog, namely, did

the Duemlers violate their obligation to take reasonable precautions to protect others, here plaintiffs, from foreseeable injuries when they knew McCann intended to and in point of fact harbored a watch or guard dog on the premises *(see, supra,* at 577). That the Duemlers reserved unto themselves the right to control how tenants kept their dogs is apparent not only from the oral directions they gave, but from the written rules and regulations they distributed. Whether the standard of reasonable care which the Duemlers, as landlords, needed to meet with regard to the confinement and control of the McCann dogs was satisfied by the issuance of these rules and regulations without more, or the circumstances presented here called upon them to require of their tenant "that the dog[s] be tied, or otherwise confined so as both to restrain the dog[s] and to exclude third persons" and to also impose a requirement that warnings be posted *(supra),* is an issue which cannot be resolved summarily.

Order and judgment reversed, on the law, without costs, and motion denied. Mahoney, P. J., Kane, Weiss, Yesawich, Jr., and Levine, JJ., concur.