GILGON, INC., Appellant,

v.

Hollis HART, et al., Appellees.

No. 13–93–277–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 8, 1994.

Rehearing Overruled Jan. 26, 1995.

Savannah Robinson, Cox & Robinson, Corpus Christi, for appellant.

Terry E. Baiamonte, William R. Edwards, III, Edwards, Terry, Baiamonte & Edwards, Corpus Christi, for appellees.

Before KENNEDY, GILBERTO HINOJOSA and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

This action rose from a traffic accident caused by Donald Horton, who drove through a stop sign and into the path of the motorcycle that Hollis Hart and Joan Gann were riding. Hart and Gann's pleadings alleged Horton's negligence and invoked the doctrine of *respondeat superior* to attribute that negligence to Horton's employer, Gilgon, Inc. After a trial on the merits, the jury found that Horton was negligent and that he was acting within the scope of his employment at the time of the accident. Raising three points of error, Gilgon appeals. We affirm.

## FACTS

Gilgon employed Horton as manager and foreman of Chango Arabian Farms, a small ranch in Flour Bluff in Nueces County. Horton's responsibilities included maintaining the ranch and caring for the horses kept there. Gilgon did not provide Horton with day to day instruction on how he was supposed to carry out his job.

On the day of the accident, Horton left the ranch with two errands in mind: purchasing pipe at Flour Bluff Lumber and stopping off at Jericho's, a local store. The trip to Flour Bluff Lumber involved responsibilities related to Horton's job; the stop at Jericho's did not. Horton purchased the pipe and then went to the store before he began the short drive back to Chango Arabian Farms. As Horton was nearing the ranch, he drove through an intersection without yielding the right of way to Hart and Gann. As a result, Hart and Gann drove their motorcycle into the side of Horton's pick-up truck. Both Hart and Gann were injured.

At trial, Hart and Gann established Horton's negligence. They also presented evidence indicating the wide scope of Horton's job responsibilities. Gilgon requested that the trial court submit a jury instruction explaining departures from the course of employment. The trial court refused this request.

Gilgon's first point of error complains that the court abused its discretion by failing to submit Gilgon's proposed instruction. In its second point, Gilgon argues that the trial court erred by refusing to admit a defense exhibit that depicted the intersection where the accident occurred. Gilgon's final point of error contends that the trial court should have granted its motion for a new trial, which challenged the factual sufficiency of the evidence supporting the jury's verdict.

## PROPOSED JURY INSTRUCTION

Gilgon's first point of error attacks the jury charge. But Hart and Gann argue that Gilgon failed to preserve this complaint for appellate review. We recognize that Texas' courts of appeal do not adhere to identical standards for the preservation of error in the trial court's charge to the jury. *See State Dept. of Highways v. Payne*, 838 S.W.2d 235, 240–41 (Tex.1992) (opinion on reh'g) (discussing the various courts' often contradictory applications of Tex.R.Civ.P. 271–279). In the hope of alleviating some of this confusion, we will briefly discuss why we reject Gilgon's argument that the instant case is controlled by *Payne*.

*Payne* involved the standard of care that governed the State's duty to eliminate the risk of harm inherent in a culvert. *Id.* at 236–38. The trial court in *Payne* submitted the case to the jury after determining, as a matter of law, that the culvert was a special defect rather than a premises defect. In its only objection to the charge, the State complained that the instruction defining the culvert as a special defect commented on the weight of the evidence and intruded on the jury's province. The State also implicitly urged the submission of the premises-defect theory by tendering a proposed jury question to determine whether Payne knew of the culvert's location.

After concluding that the trial and appellate courts had both incorrectly determined that the culvert was a special defect, the supreme court addressed the preservation-of-error issue. Considering the State's objection and tender of a requested question, the supreme court decided that the State had succeeded in preserving error. The supreme court offered the following rationale for its decision:

> [W]e do not revise our rules by opinion. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 915 (Tex.1992). We can, however, begin to reduce the complexity that *case-law* has contributed to charge procedures. The procedure for preparing and objecting to the jury charge has lost its philosophical moorings. There *should be* but one test for determining if a party has preserved error in the jury charge, and that is wheth-

er the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. *The more specific requirements of the rules should be applied, while they remain,* to serve rather than defeat this principle.

*Id.* at 241 (emphasis added). *Payne* does not abandon the rules of civil procedure in favor of a test based on "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *Id.* Instead, *Payne* demands that we apply the rules "while they remain" despite the fact that the rules cannot always be reconciled with what the test "should be." *Id.; cf. Keetch v. Kroger Co.*, 845 S.W.2d 262, 267 (Tex.1992) (three months after *Payne*, the supreme court decided another case involving the requirements for preserving error in the jury charge without any mention of the "*Payne* test"); *Alaniz v. Jones & Neuse, Inc.*, 878 S.W.2d 244, 245 (Tex.App.—Corpus Christi 1994, n.w.h.) (discussing difficulties in harmonizing *Payne* with the rules of civil procedure).

■ Gilgon is mistaken in relying on *Payne* for the proposition that the "one test" to determine if error has been preserved is whether the party made the trial court sufficiently aware of its complaint. We must also look to the rules of procedure. *See Borden, Inc. v. Rios*, 850 S.W.2d 821, 827 n. 3 (Tex. App.—Corpus Christi), *judgment set aside by agr. without reference to merits*, 859 S.W.2d 70, 71 (Tex.1993) (citing language from *Payne* as requiring application of the rules along side any "*Payne* test" analysis).

Rule 278 specifically addresses two additional requirements for preserving error in the failure to submit a definition or instruction. First, the party complaining of the judgment must have presented a written request that the omitted definition or instruction be included in the charge. Tex.R.Civ.P. 278. Second, the party complaining of the judgment must have also tendered the proposed definition or instruction in substantially correct wording. *Id.; see also Woods v. Crane Carrier Co., Inc.*, 693 S.W.2d 377, 379 (Tex.1985) (explaining that "the rule's preference for form over substance" has been toler-

ated only because the alternative overburdens the trial court).

At the threshold of our review, we must apply this analysis to determine whether Gilgon preserved any complaint about the omission of the requested instruction. The trial court submitted the disputed issue to the jury as follows:

On the occasion in question, was Donald W. Horton acting in the scope of his employment?

An "employee" is acting in the scope of his employment if he is acting in the furtherance of the business of his employer.

Answer "yes" or "no."

During the charge conference, Gilgon objected that this question was incomplete without an accompanying instruction on deviations from the course of employment. Before we discuss Gilgon's tendered instruction and written request to employ the proposed instruction, we address Gilgon's contention that the objection was sufficient by itself to preserve error.

We are aware of opinions from other appellate courts that conclude the preservation-of-error analysis upon determining that the defendant properly objected to a plaintiff's question. See, e.g., Stewart v. Moody, 597 S.W.2d 556, 558 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). Stewart and similar cases may rely on language from Rule 278 to the effect that mere objection to a question will preserve errors of omission "if the question is one relied upon by the opposing party." This phrase from Rule 278 (formerly from Rule 279) indicates that objection is sufficient to preserve error when the trial court's omission might otherwise subject the objecting party to a deemed finding. See Tex.R.Civ.P. 279 (discussing deemed finding as a possible result of failing to object to the omission of an element from a cause or defense); cf. Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex.1994) (because a cause based on a statute must track that statute, specific objection suffices to preserve error in omission of an instruction necessary to make the issue track the statute). Similarly, an objection will suffice if the charge contains an affirmative misstatement of the law. Religious of the Sacred Heart v. City of Houston, 836 S.W.2d 606, 613–14 (Tex.1992) (specific objection suffices to preserve error in submitting a measure of damages irreconcilably different from correct measure). But if a party hopes to complain on appeal that a question was wrongly submitted only because it omitted a clarifying instruction or definition, we apply the following standard:

Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment.

Tex.R.Civ.P. 278; see also Yellow Cab and Baggage Co. v. Green, 277 S.W.2d 92, 93 (Tex.1955) ("When the court's charge contains no instruction, the complaining party must accompany his clear and specific objections to such omission with a substantially correct definition or explanatory instruction.")

■ Thus a party preserves error by obtaining the court's ruling on a specific, timely objection to the omission of an element of a cause or defense relied upon wholly by an opposing party. Borden, 850 S.W.2d at 826; Wright Way Constr. Co. v. Harlingen Mall Co., 799 S.W.2d 415, 419 (Tex.App.—Corpus Christi 1990, writ denied); cf. Spencer, 876 S.W.2d at 157 (this rule applies to omissions of instructions necessary to make a charge track a governing statute). But if omission from a question is error that might be the subject of either party's appeal, we interpret the rules as requiring that the complaining party must have also tendered remedial language. Tex.R.Civ.P. 278 (placing duty to tender on "the party complaining of the judgment"); Texas Commerce Bank v. Lebco Constructors, 865 S.W.2d 68, 75 (Tex.App.—Corpus Christi 1993, writ denied); Jim Howe Homes, Inc. v. Rogers, 818 S.W.2d 901, 903 (Tex.App.—Austin 1991, no writ); Wright Way Constr., 799 S.W.2d at 419; National Fire Ins. v. Valero Energy, 777 S.W.2d 501, 507–08 (Tex.App.—Corpus Christi 1989, writ denied).

This latter situation in which both parties rely on different issues presented within one question frequently results from the mandate

that cases should be submitted to the jury in broad-form questions. *Payne*, 838 S.W.2d at 240 (contrasting such problems endemic to broad-form submission with different problems that resulted from special-issue practice); *see also* Tex.R.Civ.P. 277 (requiring broad-form submission "whenever feasible"). Under broad-form submission, a party's veiled reliance on issues within a question is often manifest in that party's objection that the court has omitted limiting instructions or definitions. *See Payne*, 838 S.W.2d at 240–41 (noting that broad-form submission typically requires that an adverse party's issues within a question must be presented as instructions); *see also* Tex.R.Civ.P. 277 (requiring that certain issues cannot be submitted by question and must be submitted by instruction). Consequently, objections that imply the necessary inclusion of limiting instructions or definitions obligate the objecting party to provide those instructions or definitions to preserve any error. Tex. R.Civ.P. 278. In the present context of a broad-form submission with defense issues that must be submitted by instruction, Rule 278 cannot operate to shift the burden of researching the law from the defendant to the court. *See Woods*, 693 S.W.2d at 379 (discussing the effect on the trial court of an objection-oriented procedure for preserving jury charge error); *City of Houston v. Wormley*, 623 S.W.2d 692, 695 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (deviation from employment, as urged by Gilgon, is an inferential rebuttal question that must be submitted by instruction under Tex.R.Civ.P. 277).

 For these reasons, we conclude that Gilgon was required to tender a substantially correct instruction to preserve the issue for appellate review. By a written request, Gilgon asked the trial court to supplement the charge with the following instruction on deviations from the scope of employment:

> An "employee" is not acting within the scope of his employment if he departs from the furtherance of the employer's business for a purpose of his own not connect[ed] with his employment and has not returned to the place of departure or to a place he is required to be in the performance of his duties.

Gilgon tendered this instruction separately from its objection to the charge and obtained the trial court's written refusal to incorporate the proposed instruction. *See* Tex.R.Civ.P. 273 (requiring that requests "shall be made separate" from objections); Tex.R.Civ.P. 276 (discussing rulings on requests).

Additionally, we conclude that Gilgon's proposed instruction is a substantially correct statement of the law governing an employee's departure from the scope of employment. *See Adams v. Valley Fed. Credit Union*, 848 S.W.2d 182, 187 (Tex.App.—Corpus Christi 1992, writ denied) (citing *Placencio v. Allied Indus. Int'l, Inc.*, 724 S.W.2d 20, 21 (Tex.1987), for definition of "substantially correct" as not affirmatively incorrect in the main substance of the instruction); *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 407–08 (Tex.App.—Corpus Christi 1987, writ denied) (discussing an employee's deviation from the scope of employment). Consequently, Gilgon's objection and tender are sufficient to preserve its complaint for review on the merits.

 We must reverse when the court fails to submit a properly requested issue on a vital defense that was pleaded and supported by more than a scintilla of evidence. Tex.R.Civ.P. 277, 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243–44 (Tex.1992); *Exxon v. Perez*, 842 S.W.2d 629, 631 (Tex.1992) (per curiam); *Texas Constr. Serv. Co. v. Allen*, 635 S.W.2d 810, 814 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Read broadly, Gilgon's first amended original answer to Hart and Gann's suit raises the issue of Horton's deviation from the course and scope of his employment. Gilgon also presented evidence that Horton's stop at Jericho's was unconnected to the furtherance of Gilgon's business. Nevertheless, the trial court did not err by refusing to submit Gilgon's requested instruction to the jury.

By uncontroverted evidence, Hart and Gann established that Horton's employment was not limited along conventional lines. He did not report to work in the morning and punch out at five o'clock in the evening. Instead, Horton lived in a trailer on the

premises of Chango Arabian Farms; he worked seven days a week, attending to matters daily and as they arose. Days passed when Horton did not speak with anyone from Gilgon, and sometimes Horton did not see his employer for months at a time. Most significantly, however, Gilgon conceded that Horton was allowed to combine his personal errands with business errands.

When previously considering a situation similar to Horton's employment with Gilgon, we held that

where a servant is permitted, at his own discretion, to mix his own private affairs with those of the master, or even to attend to both at substantially the same time, the courts will not undertake to make nice distinctions and fix with precision the line that separates the act of the servant from the act of the master.

*Smith v. Koenning*, 398 S.W.2d 411, 417 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.); *see also Wilhoit v. Iverson Tool Co.*, 119 S.W.2d 709, 712 (Tex.Civ.App.—Beaumont 1938, writ dism'd by agr.) (applying this standard to general, managerial employees who are allowed to set their own hours). In *Smith*, we employed a variation on Chief Justice Cardozo's formulation of the test to determine whether such an autonomous employee has deviated from the scope of employment. *Id.* (quoting *Texas Power & Light Co. v. Evans*, 225 S.W.2d 879, 883 (Tex.Civ.App.—Dallas 1949, no writ) (on reh'g) and citing *Marks' Dependents v. Gray*, 251 N.Y. 90, 167 N.E. 181, 183 (1929)). Under this test, Gilgon would have to present more than a scintilla of evidence on two points to become entitled to the submission of an issue on Horton's deviation from the scope of employment. First, Gilgon would have to show that Horton might have gone to Jericho's even if he had to cancel the trip to Flour Bluff Lumber. Second, Gilgon would need to present evidence that Horton would not have made the trip to Flour Bluff Lumber if the stop at Jericho's was canceled. *See Smith*, 398 S.W.2d at 418; *Texas Power & Light*, 225 S.W.2d at 883; *McKim v. Commercial Standard Ins. Co.*, 179 S.W.2d 357, 359 (Tex.Civ.App.—Dallas 1944, writ ref'd). Gilgon's evidence on these matters barely hints that Horton may have departed from the course of his employment.

Gilgon points to a discrepancy between Horton's receipt for the plumbing joint that he purchased at Flour Bluff Lumber and the type of repair that Horton intended to effect. Gilgon did not show that the pipe Horton purchased was inadequate to repair the leak. But even if Gilgon had established that Horton had purchased the wrong type of pipe, we cannot say this error would indicate that Horton had left the scope of employment. So long as employees are working to further their employers' businesses, mistakes in the method of their performance will not remove them from the scope of employment. *Broaddus v. Long*, 125 S.W.2d 340, 343 (Tex. Civ.App.—Amarillo 1939), *aff'd*, 135 Tex. 353, 138 S.W.2d 1057 (1940).

Gilgon also questions the directness of the path that Horton chose to drive back to the ranch. But Horton testified that he did not habitually choose one course over another when driving on errands. Instead, Horton would usually drive someplace by one route and return by another course for the sake of variety. The fact that Horton chose a slightly longer path with less traffic does not indicate that Horton completely strayed from furthering Gilgon's business. *See Josey–Miller Co. v. Sheppard*, 357 S.W.2d 488, 489 (Tex.Civ.App.—Beaumont 1962, no writ) (discounting the weight of evidence that a truck driver chose a longer route when considering whether driver deviated from course of employment).

Even considering these two arguments in a light favorable to Gilgon, we cannot ignore the uncontroverted testimony establishing Horton's autonomy in managing Chango Arabian Farms. Evaluating Gilgon's evidence in the context of this uncontroverted testimony, we conclude that Gilgon has created no more than a suspicion that Horton diverged from the course of his employment. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983) (discussing the legal effect of "a scintilla" of evidence that creates no more than a mere suspicion). Because Gilgon offers no more than a scintilla of evidence to show Horton's deviation, we will not disturb the trial court's decision not to submit Gilgon's

proposed divergence instruction. *Id.* (a scintilla of evidence is legally equivalent to no evidence); *Wright Way Constr.,* 799 S.W.2d at 422 (trial court need not submit an issue supported by no more than a scintilla of evidence). We therefore overrule Gilgon's first point of error.

### EXCLUSION OF DEFENSE EXHIBIT

■■■■ In its second point, Gilgon argues tht the trial court erred by excluding a diagram of the intersection where the accident occurred. The decision whether to admit or exclude an exhibit lies within the discretion of the trial court and should not be overruled unless the court has abused its discretion. *See Texas Health Enters. v. Krell,* 828 S.W.2d 192, 209 (Tex.App.—Corpus Christi), *vacated by agr.,* 830 S.W.2d 922 (Tex.1992); *National Bugmobiles, Inc. v. Jobi Properties,* 773 S.W.2d 616, 618 (Tex.App.—Corpus Christi 1989, writ denied). Furthermore, we cannot reverse a judgment on the improvident exclusion of an exhibit unless the exhibit was of a nature that its exclusion probably resulted in the rendition of an incorrect judgment. Tex.R.App.P. 81(b)(1); *Padgett v. Bert Ogden Motor's, Inc.,* 869 S.W.2d 532, 537 (Tex.App.—Corpus Christi 1993, writ denied); *Automobile Ins. Co. of Hartford v. Davila,* 805 S.W.2d 897, 910–11 (Tex.App.—Corpus Christi 1991, writ denied).

■■■■ Gilgon's exhibit depicts a map of the intersection where the accident occurred. Although Gilgon's witnesses testified that the diagram fairly and accurately represented the local streets, the witnesses did not validate the portrayal of the exhibit's other features. Whether this presents sufficient grounds for the trial court to exclude the exhibit becomes immaterial upon examination of the other exhibits admitted into evidence. Gilgon's map is nearly identical to a map that Hart and Gann had previously introduced. The exclusion of an exhibit that duplicates evidence already admitted is unlikely to result in the rendition of an incorrect judgment. *Padgett,* 869 S.W.2d at 537; *National Bugmobiles,* 773 S.W.2d at 618. Accordingly, we cannot sustain Gilgon's second point of error.

### MOTION FOR A NEW TRIAL

■■■■ In its third point of error, Gilgon maintains that the court should have granted its motion for a new trial, which attacked the factual sufficiency of the evidence for the jury's verdict. The trial court enjoys broad discretion to either grant or deny a motion for a new trial. *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (orig. proceeding). We will not disturb the trial court's ruling absent a manifest abuse of this discretion. *Id.; Twenty–Four Thousand One Hundred Eighty Dollars in U.S. Currency v. State,* 865 S.W.2d 181, 186 n. 4 (Tex.App.—Corpus Christi 1993, writ denied). To show that the trial court abused its discretion, Gilgon must demonstrate that the court denied the motion for a new trial arbitrarily and without reference to guiding principles. *See Metropolitan Life Ins. Co. v. Syntek Fin. Corp.,* 881 S.W.2d 319, 321 (Tex.1994) (per curiam) (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)); *Allied Resources Corp. v. Mo–Vac Serv. Co.,* 871 S.W.2d 773, 775 (Tex.App.—Corpus Christi 1994, writ denied).

Gilgon's motion for a new trial challenged the factual sufficiency of the evidence supporting the finding that Horton was acting within the scope of employment at the time of the accident. Specifically, Gilgon attacked Hart and Gann's proof that Horton had returned to the scope of his employment.

This argument assumes that Horton had deviated from the furtherance of Gilgon's business. As we discussed above, however, the undisputed scope of Horton's employment was broad enough to allow Horton to mix his personal and business errands. Under such circumstances, an employee remains within the course of employment while on an errand that combines work-related tasks with purely personal chores. *Smith,* 398 S.W.2d at 418; *Texas Power & Light,* 225 S.W.2d at 883.

■■■■ Consequently, Gilgon's point of error demands that we assess the strength of the evidence supporting the finding that Horton

was acting within the scope of employment at the time of the accident. We review the entire record to determine if this supporting evidence is so weak as to indicate that the jury's finding was clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Twenty–Four Thousand One Hundred Eighty Dollars,* 865 S.W.2d at 185.

Gilgon did not effectively contest Horton's testimony that the trip to Flour Bluff Lumber was in service of Gilgon and Chango Arabian Farms. Furthermore, Horton's testimony on this matter was corroborated by Gilbert Cruz, another Gilgon employee, and David Edwards, a friend of Horton's. Together with the uncontroverted testimony that Horton was permitted to combine personal and business errands, the testimony of Horton, Cruz, and Edwards is sufficient to support the jury's finding. Accordingly, we must overrule Gilgon's final point of error and affirm the judgment of the trial court.