**Dinesh BATRA, Appellant,**

v.

**Tammy CLARK, Individually and as Next Friend of Clarissa Ewell, Appellee.**

No. 01–02–00543–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 24, 2003.

Brendan F. Gowing, Brett William Arnold, Brett W. Arnold, P.C., Houston, for Appellant.

Karen L. Semanek, Vickery & Linebaugh, Baytown, Lynden Rose, Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and HIGLEY.

**OPINION**

TIM TAFT, Justice.

Appellant, Dinesh Batra, appeals a verdict finding him negligent and awarding damages to appellee, Tammy Clark, individually and as next friend of Clarissa

---

Ewell. We determine whether Batra, an out-of-possession landlord who retained no control over the premises of the rental property, owed a duty to Ewell, a third party who was injured on the property. We reverse and render judgment that Clark take nothing from Batra.

## Facts and Procedural History

Ewell, a nine-year-old girl, was attacked by a pit bull at a house located in Baytown, Texas. Batra was the owner and landlord of the rental house, and Martha Torres was the tenant. The pit bull belonged to Torres' son, who was not a resident of the rental property, but Torres sometimes kept the dog at the house. The lease agreement signed by Batra and Torres contained a clause prohibiting pets on the premises of the rental property without the written consent of Batra. The clause also provided that Batra could remove any unauthorized animal and give custody of the animal to local authorities.

Ewell went over to the Torres' house to play with Torres' daughter, Georgina. The house was surrounded by a fence, with gate openings in the front and on the back side. Although the dog was typically chained on the side of the house, it was not chained on the day Ewell was attacked. As Ewell stood on the sidewalk outside the fence of the Torres' house, she was told by Georgina to "agitate" the dog to distract it so that Georgina could leave the house and exit through the gate at the back side of the house. Ewell distracted the dog by running back and forth up and down the fence line. The dog broke through the fence and attacked Ewell, biting her numerous times on the legs. Ewell required medical treatment and stitches as a result of the attack.

Clark sued Batra and Torres for negligence. During trial, Batra moved for a directed verdict, arguing that he owed no duty to Ewell because he was an out-of-possession landlord who had no control over the dog or the rental property. After a bench trial, the trial court found Batra and Torres each 50% liable for Ewell's injuries. Batra moved for a new trial under the same grounds as his motion for directed verdict.

## Duty Owed by Out–of–Possession Landlord

In his first point of error, Batra contends that the trial court erred by overruling his motion for directed verdict and motion for new trial because he did not owe a duty to Ewell. Batra argues that, as an out-of-possession landlord who allegedly did not retain any control of the premises, he had no duty to exercise reasonable care to prevent the attack of the dog owned by the son of his tenant. Clark responds with the argument that Batra owed Ewell a duty of care because Batra (1) had actual knowledge that the dog was on the premises of the rental property and imputed knowledge of the dog's dangerous propensities, (2) retained the ability to control the rental property because of the lease provisions allowing him to access the leased premises at any time, and (3) retained the ability to control the dog because of the lease provisions prohibiting pets on the property without his written consent and giving him the right to remove any unauthorized pet.[1]

---

1. In her amended petition, Clark alleged that Batra was negligent for failing to maintain the fence surrounding the rental property and for violating a Baytown city ordinance. Clark also maintained at trial that Batra was negligent by (1) failing to inspect the rental property

ty to determine whether or not Torres was in violation of the lease clause prohibiting pets on the rental property without the written consent of Batra and (2) failing to maintain the fence surrounding the rental property. However, according to the trial court's factual

In reviewing the denial of a directed verdict on an evidentiary basis, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *Francis v. Cogdell*, 803 S.W.2d 868, 869 (Tex.App.-Houston [1st Dist.] 1991, no writ). We consider all of the evidence in the light most favorable to the party against whom the verdict would be instructed, and disregard all contrary evidence and inferences. *Id.* Every reasonable inference deducible from the evidence is to be indulged in the nonmovant's favor. *Id.* Our review is limited to the specific grounds stated in the motion. *See Cooper v. Lyon Fin. Servs., Inc.*, 65 S.W.3d 197, 207 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

A trial court has broad discretion to deny or grant a motion for new trial, and the trial court's discretion will not be disturbed on appeal absent a showing of a manifest abuse of discretion. *See Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex.1988). To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles. *Gilgon, Inc. v. Hart*, 893 S.W.2d 562, 569 (Tex.App.-Corpus Christi 1995, writ denied). In reviewing the denial of a motion for new trial on an insufficiency of the evidence challenge, we are required to consider all the evidence and set aside a fact finding only if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming as to be clearly wrong and manifestly unjust. *Id.* at 569–70.

## A. Duty

Both parties cite *Baker v. Pennoak Props., Ltd.* to support their arguments. *See id.*, 874 S.W.2d 274, 277 (Tex.App.-Houston [14th Dist.] 1994, no writ). In *Baker*, the court held that a landlord retaining control over premises used in common by different occupants of his property has a duty to protect tenants from dog attacks in the common areas of his property and will be held liable if (1) the injury occurred in a common area under the control of the landlord and (2) the landlord had actual or imputed knowledge of the dog's vicious propensities. *Id.* at 277. *Baker* is distinguishable because it involved a landlord in possession with control over the common areas, whereas this case involves a landlord out of possession with arguably no, or limited, control over the premises. *See id.; Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996) (recognizing that generally lessor relinquishes possession or occupancy of premises to lessee); *Butcher v. Scott*, 906 S.W.2d 14, 15 (Tex. 1995) (finding that party must be in control of premises to be held liable as owner or occupier). Moreover, the *Baker* court expressly refused to decide the issue of whether an out-of-possession landlord may be liable for harm caused by a tenant's dog to third parties. *Baker*, 874 S.W.2d at 277. Thus, we are faced with an issue of first impression.

findings and legal conclusions, the trial court did not base its holding on any of these theories of negligence, and Clark did not request additional findings on these theories. Therefore, we will not address these arguments. *See Texmarc Conveyor Co. v. Arts*, 857 S.W.2d 743, 747 (Tex.App.-Houston [14th Dist.] 1993, writ denied) (holding when trial court enters findings that do not establish any element of particular defense, party relying on defense must file request for additional findings to avoid waiver of that defense on appeal); *see also Fielder v. Abel*, 680 S.W.2d 655, 656–57 (Tex.App.-Austin 1984, no writ) (error waived when appellees requested no additional findings or conclusions relating to other claimed grounds of recovery).

Several other jurisdictions have imposed liability on out-of-possession landlords for dog attacks against third parties on the landlords' single-dwelling premises. *See* Danny R. Veilleux, Annotation, *Landlord's Liability to Third Person for Injury Resulting from Attack on Leased Premises by Dangerous or Vicious Animal Kept by Tenant,* 87 A.L.R.4th 1004, 1012–13 (1991). The majority of cases have held that a landlord will be liable for injuries caused by the attack of a tenant's dog only when the landlord (1) had actual knowledge of the dog's presence on the leased premises, actual knowledge of the dog's dangerous propensities, and the ability to control the leased premises, either by the terms of the lease or by trailer park or subdivision regulations; and (2) failed to exercise that ability to control. *See Uccello v. Laudenslayer,* 44 Cal.App.3d 504, 118 Cal.Rptr. 741, 746–47 (1975) (holding duty of care arises when landlord has actual knowledge of presence of dangerous animal and of its dangerous propensities and right to remove animal by retaking possession of premises); *McCullough v. Bozarth,* 232 Neb. 714, 724–25, 442 N.W.2d 201, 208 (1989) (ruling that landlord is liable for injuries caused by attack of tenant's dog only when landlord had actual knowledge of dangerous propensities of dog and, by terms of lease, had power to control dog and neglected to exercise that power); *Strunk v. Zoltanski,* 62 N.Y.2d 572, 479 N.Y.S.2d 175, 468 N.E.2d 13, 16 (1984) (stating that landlord may be liable who, with knowledge that prospective tenant has vicious dog which will be kept on premises, leases premises to tenant without taking reasonable measures, by provisions in lease or otherwise, to prevent attacks by dog); *Vigil v. Payne,* 725 P.2d 1155, 1157 (Colo.Ct.App.1986) (holding that landlord who has actual knowledge that tenant owns animal with vicious propensities has duty to take reasonable precau-

tions to prevent attacks by animal); *Palermo v. Nails,* 334 Pa.Super. 544, 483 A.2d 871, 873 (1984) (finding landlord liable for injuries by animals owned by his tenant when landlord had knowledge of presence of dangerous animal and right to control or remove animal by retaking possession of premises). *Cf. Royer v. Pryor,* 427 N.E.2d 1112, 1119 (Ind.Ct.App.1981) (refusing to hold landlord liable when he did not know of vicious propensities of tenant's dog and did not retain or exercise control over portion of premises on which attack occurred); *Roy v. Neibauer,* 191 Mont. 224, 623 P.2d 555, 556 (1981) (affirming summary judgment in favor of landlord when tenant agreed, pursuant to lease, that he would not maintain or permit to be maintained on premises dog with dangerous propensities); *Parker v. Sutton,* 72 Ohio App.3d 296, 594 N.E.2d 659, 661–62 (1991) (holding that landlord with knowledge of presence of vicious animal on premises may not be held liable if he had reasonable belief that dog was removed from property or if insufficient time has passed for landlord to take legal steps to abate hazard); *but see Vasques v. Lopez,* 509 So.2d 1241, 1242 (Fla.Dist.Ct.App.1987) (finding liable landlord who had imputed knowledge of vicious dog's presence and ability to control premises); *Merwin v. McCann,* 129 A.D.2d 925, 926, 514 N.Y.S.2d 566 (N.Y.App.Div.1987) (reversing summary judgment and remanding to trial court to determine whether landlord had actual or imputed knowledge that vicious dogs were kept on premises); *Bessent v. Matthews,* 543 So.2d 438, 439 (Fla.Dist.Ct.App.1989) (affirming judgment when there was no evidence that landlord knew or had reason to know that his tenant's dog was vicious); *Clemmons v. Fidler,* 58 Wash.App. 32, 791 P.2d 257, 259 (1990) (holding that landlord cannot be liable for injuries caused by tenant's vicious dog even if landlord has

actual or implied knowledge of dog's presence on property and vicious tendencies).

 We agree with the majority of cases that liability should be imposed on an out-of-possession landlord only when he has actual knowledge, rather than imputed knowledge, of the presence of a vicious animal on the leased premises. We hold that, if a landlord has actual knowledge of an animal's dangerous propensities and presence on the leased property, and has the ability to control the premises, he owes a duty of ordinary care to third parties who are injured by this animal.

## B. Application

We now determine whether, under the above duty, Batra had actual knowledge of the dog's presence on the leased property and dangerous propensities.

Cynthia Taplin, Torres' neighbor, testified at trial that she saw Batra fixing the roof of the rental house at some time before the dog attacked Ewell, that the dog was chained up on the side of the house, and that the dog was barking the entire time Batra fixed the roof. In factual finding number nine, the trial court found that Batra had actual knowledge of the dog's presence on the premises before Ewell was attacked, which finding Taplin's testimony supports. In conclusion of law number three, the trial court decided that Batra had control over the leased premises and imputed knowledge of the dog's vicious propensities.

Here, although the trial court found that Batra had actual knowledge of the dog's presence on the property and that Batra had control over the leased property, the trial court did not make any conclusion that Batra had actual knowledge of the

dog's vicious propensities. Instead, the trial court found only that Batra had imputed knowledge of the dog's vicious propensities. We have already determined that actual knowledge, as opposed to imputed knowledge, of a dog's vicious propensities is necessary to establish a duty to Ewell. Further, the evidence at trial does not support a conclusion that Batra actually knew that the particular dog that attacked Ewell had vicious propensities. Although Taplin testified that Batra was on the property when the dog was barking, there is no evidence showing that Batra either saw the dog and knew that it was a potentially vicious animal or identified the dog's bark as the bark of a potentially vicious animal. Thus, there is no evidence showing that Batra owed Ewell a duty of ordinary care.

 We hold that the trial court erred by overruling Batra's motion for directed verdict and motion for new trial. *See Francis,* 803 S.W.2d at 869; *Hart,* 893 S.W.2d at 569.

We sustain Batra's first point of error.[2]

## Conclusion

We reverse that portion of the judgment allocating 50% of the liability for the damages to Batra and order that Clark take nothing from Batra.

2. Because we sustain Batra's first issue, we need not reach his second issue of whether the evidence was legally and factually insufficient to show he was liable for Clarissa's injuries, assuming that he owed a duty to Clarissa.