

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00082-CV

_____

AMY BOLTON, Appellant

V.

GEORGE K. FISHER, Appellee

On Appeal from the 62nd District Court
Lamar County, Texas
Trial Court No. 85921

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# O P I N I O N

While walking to her mailbox on July 10, 2014, Amy Bolton was viciously attacked by two dogs owned by her neighbor, Mataba Kisenda Tucker. After undergoing seven surgeries as a result of the attack, Bolton sued Tucker and her landlord, George K. Fisher, and asserted separate causes of action for negligence, strict liability, public nuisance, and private nuisance. Among other things, Bolton's petition alleged that Fisher knew Tucker was harboring aggressive dogs on her property, but failed to use reasonable care to prevent the attack.

Fisher filed traditional and no-evidence motions for summary judgment, arguing that (1) summary judgment on the negligence claim was proper because (a) he was an out-of-possession landlord who owed no duty to Bolton under the circumstances of the attack, and (b) there was no evidence that Fisher owed any legal duty to Bolton;[1] (2) a landlord cannot be held strictly liable for an attack by a lessee's dogs; and (3) Texas law does not support a separate cause of action for public or private nuisance. The trial court granted Fisher's summary judgment motions and created a final, appealable order by severing Bolton's claims against Fisher from her claims against Tucker into a separate cause number.[2] Bolton appeals, arguing that the trial court's summary judgment was erroneous.

We find that there are genuine issues of material fact as to whether Fisher had actual knowledge of the presence of a vicious animal on the leased premises. Therefore, we reverse the

---

[1]Fisher's summary judgment motions were based solely on the question of legal duty. His motions did not address the remaining elements of the negligence claim, including breach of a duty, causation, and damages.

[2]Because Bolton's claims against Tucker are currently pending, we only discuss the facts necessary to determine this appeal.

2

trial court's summary judgment on Bolton's negligence claim, but affirm the judgment in all other respects.

## I.    Standard of Review

"We review grants of summary judgment de novo." *First United Pentecostal Church of Beaumont, d/b/a the Anchor of Beaumont v. Leigh Parke*r, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). "In our review we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor." *Id.* (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

"When a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion." *Id.* (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). "If the non-movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails." *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). "Thus, we first review each claim under the no-evidence standard." *Id.* "To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements." *Id.* at 220 (citing *Ridgway*, 135 S.W.3d at 600). "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "The evidence does not create an issue of material fact if it is 'so weak as to do no more

3

than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

"Any claims that survive the no-evidence review will then be reviewed under the traditional standard." *Id.* at 119–20. "A traditional motion for summary judgment is granted only when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law." *Tipps v. Chinn Exploration Co.*, No. 06-13-00033-CV, 2014 WL 4377813, at *2 (Tex. App.—Texarkana Sept. 5, 2014, pets. denied) (mem. op.) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)).

## II.    The Summary Judgment Evidence

Tucker leased one of the twenty rental homes owned by Fisher on Walker Street in Paris, Texas. Tucker and Fisher's depositions established that Tucker owned dogs, but did not have the money to pay for a pet deposit when she signed the rental agreement. Consequently, Fisher testified that Tucker's lease agreement prohibited her from keeping pets on the premises of the single-family, detached rental home. The lease agreement itself mentioned that Tucker had "2 outside dogs," but also indicated that "NO PETS" were allowed to reside on the property. In spite of this prohibition, Tucker testified that she kept three "watchdogs" on the premises, and summary judgment evidence established that they had lived in Tucker's home since at least March 2014.

Prior to Bolton's attack, Tucker's home had been broken into and burglarized. Pursuant to Tucker's request, Fisher went to the home to repair the broken door and saw three barking dogs in Tucker's yard. He told Tucker that she would have to pay the pet deposit in order to keep the dogs.

4

During his deposition, Fisher testified that he never saw the dogs fighting or attacking animals and that he had no indication that the dogs were dangerous or vicious prior to the attack on Bolton. Yet, Fisher's statement to his Texas Farm Bureau insurance adjuster, Jessica Hill, established that, prior to the attack, Fisher knew Tucker kept the dogs as watchdogs to secure the premises. He further told Hill that, when he first saw the dogs, they appeared to be "aggressive," "mixed breed dogs."

Both Fisher and Tucker testified in their depositions that Fisher did not know of the dogs' presence on the property until a few days before Bolton's attack. Yet, Fisher testified that anyone driving by Tucker's home could see into the backyard where the two Pitbull mixes and one "Shepherd Cross" was kept, and Tucker told Hill in a recorded statement that the dogs remained outside unless it was raining. Bolton also testified that she saw Fisher at Tucker's home at least three times before the attack and opined that he must have been aware of the dogs' dangerous propensities because they were barking and "trying to get off the chain and eat him up that day."

Bolton's neighbor, Cleba Joe Bridges, corroborated Bolton's testimony that Fisher had noticed the dogs at least two weeks before Bolton's attack, at a time when Tucker was not home. Bridges testified that he watched Fisher approach the house and witnessed the dogs "barking like crazy. . . and growling." Bridges said that the "[v]ery aggressive" dogs had a "rough growl," "were really getting after it," and were "raising the roof with [Fisher]." While two of the dogs were in a

5

pen in Tucker's backyard, Bridges said that a Pitbull chained outside of the pen was pulling its chain in Fisher's direction while barking and that Fisher noticed the dog.[3]

## III. Summary Judgment on Bolton's Negligence Claim Was Improper

Because both Tucker and Bolton testified at one point during their depositions that they had no evidence that Fisher actually knew of the dogs' dangerous propensities before the attack, Fisher filed traditional and no-evidence motions for summary judgment, which argued that he owed no duty of ordinary care to Bolton. As we discuss below, summary judgment should not have been granted on Bolton's negligence claim.

### A. Fisher Owed a Duty of Ordinary Care

"It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability." *Hyde v. Hoerauf*, 337 S.W.3d 431, 435 (Tex. App.—Texarkana 2011, no pet.) (citing *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993)). Thus, in order to sustain a negligence action in the face of a defendant's no-evidence motion for summary judgment, "the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). "The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Hyde*, 337 S.W.3d at 435 (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).

---

[3]The summary judgment evidence established that Tucker decided to euthanize all three dogs after Bolton was attacked.

The trial court granted Fisher's summary judgment, which was based on the theories (1) that Fisher conclusively established that he owed no legal duty to Bolton and (2) that Bolton had no evidence to support an imposition of the duty of ordinary care upon Fisher. Before we discuss this issue, we must resolve the parties' dispute as to what evidence is required in order to impose a legal duty upon Fisher. While Bolton argues that evidence of a landowner's imputed knowledge of a dog's dangerous propensities will support the assignment of a duty of care on the part of a landlord, Fisher argues that actual knowledge of the same is required.

In support, Fisher cites to *Batra v. Clark*, 110 S.W.3d 126, 127 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In that case, Batra, an owner and landlord of a rental home, was sued for negligence after the lessee's Pitbull attacked a nine-year-old girl who was standing on the sidewalk beside the home. *Id.* The lease agreement prohibited pets on the premises without Batra's written consent and further authorized him to remove any unauthorized animal. *Id.*

A bench trial resulted in a finding that Batra and the owner were each 50% responsible for the girl's injuries. *Id.* On appeal, Batra argued that an out-of-possession landlord who did not retain control of the premises had no duty to exercise reasonable care to prevent the dog's attack. *Id.* Our sister court agreed, reversed the trial court's judgment, and rendered a take-nothing judgment in favor of Batra. *Id.* In doing so, the court rejected the appellee's arguments that Batra should be held responsible because he (1) "had actual knowledge that the dog was on the premises of the rental property," (2) had "imputed knowledge of the dog's dangerous propensities," (3) "retained the ability to control the rental property because of the lease provisions allowing him to access the leased premises at any time," and (4) "retained the ability to control the dog because

7

of the lease provisions prohibiting pets on the property without his written consent and giving him the right to remove any unauthorized pet." *Id.* After conducting a learned and in-depth review of cases involving liability on "out-of-possession landlords for dog attacks against third parties on the landlords' single-dwelling premises," *Batra* adopted the standard for liability required by a majority of those cases, and set forth a rule requiring evidence of "actual knowledge, rather than imputed knowledge, of the presence of a vicious animal on the leased premises" before liability could be imposed against the landlord. *Id.* at 129–30. Thus, *Batra* espoused the following test: "We hold that, if a landlord has actual knowledge of an animal's dangerous propensities and presence on the leased property, and has the ability to control the premises, he owes a duty of ordinary care to third parties who are injured by this animal." *Id.* at 130.

The test set forth by our sister court in *Batra*, requiring actual knowledge of an animal's dangerous propensities, was adopted in subsequent cases addressing the issue. *See Osore v. Reed*, No. 09-15-00352-CV, 2017 WL 371485, at *5 (Tex. App.—Beaumont Jan. 26, 2017, no pet.) (mem. op.); *Ortega v. Phan-Tran Prop. Mgmt., L.L.C.*, No. 01-15-00676-CV, 2016 WL 3221423, at *2–3 (Tex. App.—Houston [1st Dist.] Jun. 9, 2016, pet. denied) (mem. op.); *Do v. Nguy*, No. 14-13-00848-CV, 2014 WL 7409746, at *3 (Tex. App.—Houston [14th Dist.] Dec. 30, 2014, no pet.) (mem. op.); *see also Mattox v. Timmerman*, No. 03-13-00107-CV, 2013 WL 4516125, at *3 (Tex. App.—Austin Aug. 22, 2013, no pet.) (mem. op.).[4] Finding the reasoning in *Batra* persuasive, we likewise conclude that evidence of a landlord's actual knowledge of a dog's dangerous propensities is required in order for a duty to exist to protect others from a lessee's dog.

_____

[4]The Texas Supreme Court has not yet expressed an opinion on this issue.

"Actual knowledge . . . is what a person actually knows, as distinguished from constructive knowledge, or what a person should have known." *Ortega*, 2016 WL 3221423, at \*3 (quoting *Oiltanking Hous., L.P. v. Delgado*, No. 14-14-00158-CV, 2016 WL 354439, at \*7 (Tex. App.—Houston [14th Dist.] Jan. 28, 2016, no pet.) (mem. op.) (internal quotation marks omitted)). With this framework in mind, we next examine the evidence of Fisher's actual knowledge with respect to any dangerous tendencies in Tucker's dogs.

**B.      Genuine Issues of Material Fact Precluded Summary Judgment on the Negligence Claim**

The summary judgment evidence in this case established that Fisher saw the dogs prior to the attack, described them as aggressive dogs, and knew that Tucker was keeping them to serve as guard dogs that were supposed to protect her home, presumably by force, if necessary. Bridges testified that he saw the aggressive nature in which Tucker's dogs responded to Fisher as he approached her home. According to Bridges, the dogs "were raising the roof with [Fisher]." Bridges testified that the dogs were "barking like crazy" and growling in a "rough" manner and that the Pitbull that bit Bolton was pulling the chain in the direction where Fisher was standing.

Here, as in *Batra*, the landlord saw the dogs barking prior to the attack. However, in *Batra*, the court's application of its test was greatly affected by the absence of any evidence "showing that Batra either saw the dog and knew that it was a potentially vicious animal or identified the dog's bark as the bark of a potentially vicious animal." *Batra*, 110 S.W.3d at 130. The facts that Fisher saw the dogs barking and described them as aggressive, combined with Bridges' eye-

9

witness version of an encounter between the dogs and Fisher, distinguishes this case from *Batra*.[5] We conclude that Bolton's evidence, demonstrating that Fisher knew of Tucker's guard dogs' aggressive nature was, when viewed in the light most favorable to Bolton, sufficient to withstand Fisher's no-evidence motion for summary judgment.

Fisher argues that he qualified his description of the dogs' nature by stating only that he described them as aggressive because they were barking in a manner that was not unusual. Bridges testimony, however, created a genuine issue of material fact on this point. The summary judgment evidence further established that Fisher knew that the dogs were present on the property and, pursuant to the terms of the lease, had the ability to request removal of the dogs from the premises. *See Do*, 2014 WL 7409746, at *3 (concluding that the terms of a lease imposing a "pet weight limit" goes to the control element of the *Batra* test). Therefore, we cannot conclude that Fisher established his entitlement to summary judgment on the issue of legal duty as a matter of law. The traditional motion for summary judgment was improper.

We sustain Bolton's first point of error and overrule the trial court's summary judgment on Bolton's negligence claim.

## IV.    Summary Judgment on Bolton's Strict Liability Claims Was Proper

Next, Fisher argues that the trial court erred in granting Bolton's summary judgment with respect to the strict liability claim. On this issue of strict liability, we have previously written:

> "An owner of a vicious animal can be strictly liable for harm, while an owner of a non-vicious animal can be 'subject to liability for his negligent handling of such an animal.'" *Bushnell v. Mott*, 254 S.W.3d 451, 452 (Tex. 2008) [per curiam] (quoting

---

[5]*See Villarreal v. Elizondo*, 831 S.W.2d 474, 477 (Tex. App.—Corpus Christi 1992, no pet.) (holding that fact dog is guard dog is factor in determining whether animal is dangerous).

10

*Marshall v. Ranne*, 511 S.W.2d 255, 259 (Tex. 1974)). Thus, "'a possessor of a domestic animal which [the owner] has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm caused thereby to others . . . although he has exercised the utmost care to prevent it from doing the harm.'" *Marshall*, 511 S.W.2d at 258 (quoting RESTATEMENT OF TORTS, § 509 (1938)); *see* RESTATEMENT (THIRD) OF TORTS, § 23 (2010).

The elements of a strict liability claim in this context have been articulated as follows:

To recover on a claim of strict liability for injury by a dangerous domesticated animal, a plaintiff must prove: (1) the defendant was the owner or possessor of the animal; (2) the animal had dangerous propensities abnormal to its class; (3) the defendant knew or had reason to know the animal had dangerous propensities; and (4) those propensities were a producing cause of the plaintiff's injury.

*Bowman v. Davidson*, No. 06-14-00094-CV, 2015 WL 3988675, at *2 (Tex. App.—Texarkana July 1, 2015, no pet.) (mem. op.) (footnotes omitted) (quoting *Thompson v. Curtis*, 127 S.W.3d 466, 451 (Tex. App.—Dallas 2004, no pet.) (citing *Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 660 (Tex. App.—Waco 2002, no pet.)). It is undisputed that Fisher did not own or possess Tucker's dogs at the time of Bolton's attack.[6] Accordingly, we conclude that Fisher cannot be held to the standard of strict liability in this case. *See Hill v. Pillar*, No. 01-97-00994-CV, 1999 WL 11729, at *3 (Tex. App.—Houston [1st Dist.] Jan. 14, 1999, no pet.) (not designated for publication) (determining that a landlord cannot be held strictly liable for an attack by a lessee's dog). A finding otherwise would vitiate our holding above requiring a landlord's actual knowledge of a dog's dangerous propensities prior to imposition of negligence liability.

---

[6]In support of his position that a landlord does not need to own or possess a dog in order to be held strictly liable for an attack, Bolton cites *Arrington Funeral Home v. Taylor*, 474 S.W.2d 299, 301 (Tex. Civ. App.—Eastland 1971, writ ref'd n.r.e.). Arrington, a premises liability case, does not support Bolton's position since the attacking dog was owned by the defendant. *Id.* at 300.

11

Because we find that Fisher could not be held strictly liable for the injuries caused by Tucker's dogs, we overrule Bolton's second point of error, and conclude that summary judgment was properly granted on her strict liability claim.

## V. Summary Judgment on the Nuisance Claims

Last, we address the propriety of Bolton's separate causes of action for public and private nuisance.[7] "A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Ortega*, 2016 WL 3221423, at \*4 (quoting *Barnes v. Mathis*, 353 S.W.3d 760, 763 (Tex. 2011) (per curiam)). "A public nuisance 'affects the public at large' by 'adversely affect[ing] either the entire community, a public gathering place, or even a considerable portion of the citizenry.'" *Id.* (quoting *Walker v. Tex. Elec. Serv. Co.*, 499 S.W.2d 20, 27 (Tex. Civ. App.—Fort Worth 1973, no writ)). "A private nuisance affects an individual or a small number of individuals rather than the public at large." *Mathis v. Barnes*, 377 S.W.3d 926, 930 (Tex. App.—Tyler 2012, no pet.) (op. on remand).

---

[7]Bolton's claim for public nuisance alleged:
> The Defendants allowed dangerous dogs to remain on the premises at issue and further failed to stop such dogs from roaming at large on and near the premises. The presence and roaming of the dogs was a nuisance to the public at large, such that the public at large could have been attacked and the public at large's movement through the neighborhood, using public sidewalks and streets, was hindered and hampered. In addition to such damages, the Plaintiff was physically injured as a result of the Defendants' conduct. The Defendants' conduct, in addition to being negligent, is culpable because it is abnormal and out of place in its surroundings, and invades another's interest.

Her claim for private nuisance asserted:
> The Plaintiff had a private interest in land. The Defendants interfered with or invaded the Plaintiffs interest by conduct that was negligent, intentional and unreasonable, or abnormal and out of place in its surroundings. The Defendants' conduct resulted in a condition that substantially interfered with the Plaintiffs private use and enjoyment of the land. The nuisance caused injury to the Plaintiff.

12

In the most recent case discussing public and private nuisance in the context of a dog bite, our sister court in *Ortega* set forth the requirements of asserting public and private nuisance as separate causes of action. *Ortega* explained, "Generally, for an actionable nuisance to arise, 'a defendant must . . . engage in one of three kinds of activity: (1) intentional invasion of another's interest; (2) negligent invasion of another's interests; or (3) other conduct, culpable because [it is] abnormal and out of place in its surroundings, that invades another's interest.'" *Ortega*, 2016 WL 3221423, at *4 (quoting *Tex. Woman's Univ. v. Methodist Hosp.*, 221 S.W.3d 267, 285 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *City of Tyler v. Likes*, 962 S.W.2d 489, 503–04 (Tex. 1997))). "When . . . a claim of public nuisance is grounded in negligence, the plaintiff must allege and prove a legal duty owed to her, a breach of that duty by the defendants, and damage proximately resulting from the breach." *Id.* When *Ortega* was decided, it appeared that Texas law allowed nuisance claims as separate causes of action.

However, after reviewing the history of nuisance claims and the proof required, the Texas Supreme Court decided, after *Ortega* was written, that "nuisance is . . . not a cause of action in and of itself." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 591 (Tex. 2016). The court wrote, "[W]e believe the better approach is to utilize the term 'nuisance' to refer not to a cause of action or to the defendant's conduct or operations, but instead to the particular type of *legal injury* that can support a claim or cause of action seeking legal relief." *Id.* at 594. While the court acknowledged that "certain injuries to a person's right to the 'use and enjoyment of property' can also constitute a form of legal injury for which a legal remedy will be granted," it also

13

cautioned, "A legal injury, however, is neither the breach of a duty that gives rise to liability for the legal injury nor the damages that may be awarded as compensation for the legal injury." *Id.*

Bolton asserted separate causes of action for nuisance. Because nuisance is not a cause of action, these separate claims cannot stand. *Id.* at 591; *Town of Dish v. Atmos Energy Corp.*, No. 15-0613, 2017 WL 2200342, at *1 n.2 (Tex. May 19, 2017). Although it is possible that the nuisance, or legal injury, alleged in Bolton's petition could have given rise to a cause of action, such a cause of action was not included in the live pleading before the trial court. Accordingly, we must conclude that the trial court properly granted summary judgment on Bolton's separate causes of action for public and private nuisance. Consequently, we overrule Bolton's last point of error.

## VI. Conclusion

We reverse the trial court's decision to grant summary judgment in Fisher's favor on Bolton's negligence claim and remand the matter to the trial court for further proceedings. We affirm the remainder of the trial court's judgment.

> Ralph K. Burgess
> Justice

Date Submitted:    June 5, 2017
Date Decided:    July 26, 2017

14