TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00587-CV






Luzstella Arbelaez, Appellant


v.


Just Brakes Corporation, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT

NO. 02-694-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING





O P I N I O N




 This is a summary judgment case. We are asked to review the grant of a traditional (1)
motion for summary judgment in favor of appellee, Just Brakes Corporation. The district court ruled
as a matter of law that Brian Paul, an employee of Just Brakes, was not within the course and scope
of his employment at the time of an automobile collision with appellant, Luzstella Arbelaez. 
Concluding that Just Brakes failed to prove as a matter of law that Paul was not acting within the
course and scope of his employment, we reverse and remand.


BACKGROUND


 In January 2001, Paul, a mechanic for Just Brakes, arrived at work at approximately
6:45 a.m. Within a few minutes, according to Paul's deposition testimony, the shop manager gave
Paul his "first assignment" of the day, which was to pick up breakfast for himself, his manager, and
his other co-workers at a nearby McDonald's restaurant. While exiting the Just Brakes parking lot
in his own vehicle, Paul collided with Arbelaez.

 Arbelaez filed a negligence lawsuit against Paul. After some discovery, she amended
her petition to name Just Brakes as an additional defendant, claiming it was vicariously liable for
Paul's negligence. Through discovery, Arbelaez learned of several facts, some of which are
disputed, that indicated that Paul was within the course and scope of employment at the time of the
collision. Paul testified in a deposition that his manager had asked him to go to McDonald's as his
"first assignment" of the day. (2) In a summary-judgment affidavit, Paul's manager stated that he
merely allowed Paul to go after Paul had volunteered. However, in a later deposition, Paul's
manager admitted that he could not state for sure one way or the other and that he could have asked
Paul to go. Furthermore, Paul's manager affirmatively testified in his deposition that an employee
routinely picked up breakfast for the crew every morning. A corporate representative for Just Brakes
also testified via deposition that this practice was used not only at this particular Just Brakes location,
but at other Just Brakes locations as well. Moreover, the corporate representative testified that
minimizing the number of absent employees, as this method of obtaining breakfast did, benefitted
Just Brakes because it was able to service more cars in a shorter period of time.

 Paul stated he typically made the breakfast run for the shop because "they"
reimbursed him ten dollars a week for his gas money. Just Brakes asserts that the term "they" refers
to his fellow employees, but Paul specifically stated in his deposition that it was his manager who
paid him. (3) Finally, on the morning in question, Paul was "on the clock" and was paid for the time
he spent running this errand.

 Just Brakes filed a traditional motion for summary judgment, asserting that it was not
vicariously liable for Paul's negligence because he was not acting within the course and scope of his
employment at the time of the accident. The district court granted Just Brakes' motion. This appeal
followed.

DISCUSSION


Standard of review

 Because the propriety of a summary judgment is a question of law, we review the trial
court's decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Texas Dep't
of Ins. v. American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.).
A defendant who moves for a traditional summary judgment must disprove at least one essential
element of each of the plaintiff's theories of recovery or conclusively establish each element of an
affirmative defense. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548
(Tex. 1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts
resolved in its favor. American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon,
690 S.W.2d at 549. We disregard all conflicts in the evidence and accept the evidence favoring the
nonmovant as true. Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d
41, 47 (Tex. 1965); Domizio v. Progressive County Mut. Ins. Co., 54 S.W.3d 867, 871 (Tex.
App.--Austin 2001, pet. denied). As Just Brakes so succinctly states in its appellate brief: "The
purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by
affidavit, but to provide a method of summarily terminating a case when it clearly appears that only
a question of law is involved, and that no genuine issue of fact remains." See Schlager v. Clements,
939 S.W.2d 183, 186 (Tex. App.--Houston [14th Dist.] 1996, writ denied); Dallas Cent. Appraisal
Dist. v. G.T.E. Directories Corp., 905 S.W.2d 318, 320 (Tex. App.--Dallas 1995, writ denied)).

 Although the parties dispute some of the facts at issue, our standard of review requires
us to accept the following facts as true:



 Paul was asked by his manager to obtain breakfast for the crew as Paul's "first
assignment" of the day;

 Paul's breakfast run was a daily routine, both at this and other Just Brakes
locations;

 Just Brakes benefitted by having only one employee out of the shop at a time;

 Paul's manager paid him ten dollars a week in gas money to run this errand; and

 Paul was "on the clock" and paid by Just Brakes for the time spent running this
errand.




Vicarious liability in general

 An employer may be held liable for the tortious acts of an employee if the acts are
within the course and scope of employment. See Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d
945, 947 (Tex. 1998). To defeat Arbelaez's claim of vicarious liability, Just Brakes was required
to establish as a matter of law either that: (1) Paul was not an employee; (2) no negligent act
occurred; or (3) Paul was not acting within the course and scope of his employment at the time of
the collision. See Drooker v. Saeilo Motors, 756 S.W.2d 394, 396 (Tex. App.--Houston [1st Dist.]
1988, writ denied) (citing Leadon v. Kimbrough Bros. Lumber Co., 484 S.W.2d 567, 569 (Tex.
1972)). Only the third prong--course and scope of employment--is at issue here.

 Course and scope of employment is generally a fact issue like negligence or
proximate cause. See, e.g., GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 618 (Tex. 1999); Texas
Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 515 (Tex. 1995). In the context of a
traditional motion for summary judgment, controlling fact issues are generally for the trier of fact,
and summary judgment for a defendant is appropriate only if the defendant-movant proves that no
genuine fact issue exists on an essential element of the plaintiff's claim. See El Chico Corp. v.
Poole, 732 S.W.2d 306, 315 (Tex. 1987); Jacobs v. Theimer, 519 S.W.2d 846, 847 (Tex. 1975). The
primary test for determining whether an employee is acting within the course and scope of
employment is whether the employer has the right to direct and control the employee's performance
at the time of the alleged negligent act. St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 542 (Tex. 2003)
("the right to control remains the 'supreme test' for whether the master-servant relationship exists"
and thus whether the rule of vicarious liability applies) (quoting Golden Spread Council, Inc. No.
562 of Boy Scouts of Am. v. Akins, 926 S.W.2d 287, 290 (Tex. 1996)); American Nat'l Ins., Co. v.
Denke, 95 S.W.2d 370, 373 (Tex. 1936); see also Restatement (Second) of Agency §§ 212, 219, 235
cmt. a (1958). (4)

 To ultimately prove that an employee acted within the course and scope of
employment, however, Arbelaez must prove at trial that the act was (1) within the general authority
given to the employee; (2) in furtherance of the employer's business; and (3) for the accomplishment
of the object for which the employee was employed. (5) Leadon v. Kimbrough Bros. Lumber Co., 484
S.W.2d 567, 569 (Tex. 1972). We can only uphold the district court's summary judgment if Just
Brakes disproved as a matter of law at least one of these essential elements. See Tex. R. Civ. P.
166a(c); Nixon, 690 S.W.2d at 548. Because Paul's manager authorized Paul to obtain breakfast for
the crew, Just Brakes does not dispute that Paul's actions were within the general authority given to
him. We therefore address only the second two prongs.

 In conducting our summary-judgment review, however, we wish to stress that our task
is not to weigh the evidence to determine whether Paul was in fact within the course and scope of
employment at the time of the collision. That question must be resolved by the trier of fact. Rather,
we are to review the summary-judgment evidence, construed in favor of the nonmovant, Arbelaez,
and determine whether Just Brakes has carried its burden to establish as a matter of law that no
genuine fact issues exist regarding the question of course and scope. Therefore, Just Brakes' burden
is certainly a heavy one. It must establish as a matter of law that, construing the facts in the light
most favorable to Arbelaez, it is entitled to a finding that Paul was not within the course and scope
of employment at the time of the collision. We conclude Just Brakes has not met this burden.


Just Brakes' motion for summary judgment

 The sole ground on which Just Brakes moved for summary judgment was that Paul
was not within the course and scope of his employment when the collision occurred. In its attempt
to prove as a matter of law that Paul was not within the course and scope of employment, Just Brakes
advances several arguments. First, Just Brakes states: "It is well established that an employee is not
acting in the furtherance of his employer's business when he deviates from that employer's business
for a personal purpose." Just Brakes then asserts that Paul's manager possibly "condoned," "knew
of, or allowed" Paul to make the breakfast run, but Paul was "not ordered" to go. Just Brakes
concludes that Paul's personal errand did not benefit Just Brakes, "regardless of whether [Paul's]
manager knew of, or condoned, the diversion."

 Just Brakes' argument fails to prove that Paul was not within the course and scope
of his employment for several reasons. First, Just Brakes' argument presupposes that Paul's manager
merely acquiesced in allowing Paul to make the breakfast run. The summary-judgment evidence
indicates, however, that Paul's manager affirmatively asked Paul to make the breakfast run for the
shop. Under our standard of review, we cannot--as Just Brakes would have us do--assume that
Paul requested permission to make the breakfast run; we must assume Paul's manager asked Paul
to perform this errand. See American Tobacco Co., 951 S.W.2d at 425.

 Next, Just Brakes argues that Paul deviated from his employment because the
breakfast run was for purely personal purposes. This argument is contradicted by the summary-judgment evidence that Paul made the breakfast run as his "first assignment" of the day after he was
requested to do so by his manager. See id. "If the purpose of serving the master's business actuates
the servant to any appreciable extent his acts are within the scope of employment." Howard v.
American Paper Stock Co., 523 S.W.2d 744, 747 (Tex. Civ. App.--Fort Worth 1975), reformed and
aff'd, 528 S.W.2d 576 (Tex. 1975); accord Best Steel Buildings, Inc. v. Hardin, 553 S.W.2d 122,
128 (Tex. Civ. App.--Tyler 1977, writ ref'd n.r.e.); Dictaphone Corp. v. Torrealba, 520 S.W.2d
869, 872 (Tex. Civ. App.--Houston [14th Dist.] 1975, writ ref'd n.r.e.). Even if Paul was personally
benefitted to some degree by his breakfast run, his actions could still be within the course and scope
of his employment. See Gilgon, Inc. v. Hart, 893 S.W.2d 562, 568 (Tex. App.--Corpus Christi
1994, writ denied) (employee's actions may still be within course and scope of employment even
if private matters are mixed with business errand); Torrealba, 520 S.W.2d at 872 ("Conduct may be
within the scope of employment, although done in part to serve the purposes of the servant or of a
third person.") (citing Restatement (Second) of Agency § 236 (1958)); Josey-Miller Co. v. Sheppard,
357 S.W.2d 488, 490 (Tex. Civ. App.--Beaumont 1962, no writ) (employee still within course and
scope even when "there is a mingling of the master's business with the servant's business"). We
therefore hold that Just Brakes failed to prove that Paul deviated from his employment by complying
with his manager's request to make the breakfast run.

 Finally, Just Brakes argues that Paul's "personal errand" was not in furtherance of
Just Brakes' business. As explained above, the summary-judgment evidence does not prove that
Paul's errand was for purely personal purposes. Moreover, summary-judgment evidence exists to
indicate that Just Brakes was indeed benefitted by Paul's breakfast run. Just Brakes' corporate
representative testified in a deposition (6) that (1) Just Brakes can complete more work in a shorter time
period with more mechanics present; (2) the practice of using one employee to obtain breakfast for
the entire shop was common at various Just Brakes locations; (3) to get a day's work done, a store
requires a minimal number of mechanics; (4) it is important to have a manager present at all times;
and (5) a reasonable manager would try to reduce the number of mechanics missing at any given
time. Because this routine practice benefitted Just Brakes, albeit indirectly, Just Brakes has failed
to prove that Paul's conduct was a purely personal errand that was not in furtherance of Just Brakes'
business.

 We also address the numerous cases Just Brakes cites in support of its contentions
laid out above. (7) Each of these cases is easily distinguishable. See Gant v. Dumas Glass & Mirror,
Inc., 935 S.W.2d 202 (Tex. App.--Amarillo 1996, no writ) (employee commuting from lunch
break); Brown v. American Racing Equip., Inc., 933 S.W.2d 734 (Tex. App.--San Antonio 1996,
no writ) (employee exceeded scope of manager's authorization when performing "favor" for
manager while on lunch break); J&C Drilling Co. v. Salaiz, 866 S.W.2d 632 (Tex. App.--San
Antonio 1993, no writ) (employee commuting to work site following dinner); Andrews v. Houston
Lighting & Power, 820 S.W.2d 411 (Tex. App.--Houston [14th Dist.] 1991, writ denied) (employee
going to lunch). None of these cases addresses a situation where an employee complied with an
employer's request to run an errand that benefitted, even indirectly, the employer's business.

 Just Brakes also cites Mitchell v. Ellis, 374 S.W.2d 333 (Tex. App.--Fort Worth
1963, writ ref'd), for the proposition that no benefit flows to the employer by allowing an employee
to engage in a purely personal matter. (8) As explained above, Paul's breakfast run was not a purely
personal matter, as was at issue in Mitchell. See id. Paul was complying with his manager's request
to perform an errand that benefitted Just Brakes.

 Finally, Just Brakes cites two cases for the proposition that an employer's
reimbursement of gas money to an employee does not create a fact issue on course and scope of
employment. These cases, too, are easily distinguishable in that they involve employees commuting
to or from work, where the reimbursement of gas money was the only factor supporting a contention
that the employee was within the course and scope of employment. See Wilson v. H.E. Butt Grocery
Co., 758 S.W.2d 904, 907 (Tex. App.--Corpus Christi 1988, no writ) (employee driving home
following work was compensated for extra trip to office); London v. Texas Power & Light Co., 620
S.W.2d 718, 720 (Tex. App.--Dallas 1981, no writ) (employee driving to work at temporary job site
was compensated for extra distance traveled to temporary job site). Here, the summary-judgment
evidence indicates not only that Paul was reimbursed his gas money on a weekly basis, but also that
Paul's manager asked Paul to perform this errand on a routine basis, and that the errand benefitted
Just Brakes.

 Having reviewed Just Brakes' motion for summary judgment, we hold that Just
Brakes failed to prove as a matter of law that Paul was not acting within the course and scope of his
employment. (9)


CONCLUSION


 Under our standard of review, every reasonable inference must be indulged in favor
of Arbelaez and all doubts resolved in her favor. Applying this summary-judgment standard,
genuine fact issues exist as to whether Paul's actions were within the course and scope of his
employment. Just Brakes has therefore failed to disprove as a matter of law Arbelaez's claim of
vicarious liability. The ultimate question of whether Just Brakes is vicariously liable for Paul's acts
must be decided by a trier of fact. We therefore reverse the summary judgment of the district court
and remand for further proceedings.


 __________________________________________

 Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and B. A. Smith: Opinion by Justice Kidd;

 Dissenting Opinion by Justice B. A. Smith

Reversed and Remanded

Filed: May 20, 2004
1. The record does not contain a no-evidence motion for summary judgment.
2. Paul also testified in his deposition as follows:


Q. Okay. And, just so I'm clear on this, Mr. Paul, you are here today telling us
under oath that you were on a job assignment from Just Brakes when this
collision occurred. Isn't that right, sir?



 Yes.




 You had already punched in. You were on the clock. Right, sir?




 Yes.




 Your gas was paid for these trips. Right?




 Yes.




 Your manager had told you to go pick up breakfast. Right, sir?




 Yes.
3. Just Brakes' corporate representative testified that mechanics would be reimbursed their
gas money by the manager when they used their personal vehicles to run business errands such as
picking up parts, driving mechanics between Just Brakes locations, or taking customers home. Just
Brakes concedes that these sorts of errands would be within the course and scope of employment.
4. The Restatement (Second) of Agency states that, when considering course and scope of
employment, "[i]t is the servant's state of mind that is material," and the servant's conduct can be
within the course and scope of employment "if the servant is actuated to some extent by an intent
to serve the master." Restatement (Second) of Agency § 235 cmt. a (1958). Where a servant was
carrying out the express orders of the master, an inference is created that the servant was within the
course and scope of employment; the master, however, "can rebut the inference by proving that [the
servant] was [acting] solely for a purpose of his own and not to [serve the master]." Id. illus. 1.
5. We note that this test was developed in fact situations where it was unclear whether the
servant was actually serving the master. None of the seminal cases that developed this test involved
a situation where the servant was carrying out, albeit negligently, the express directions of the
master. See, e.g., Southwest Dairy Products Co. v. De Frates, 25 S.W.2d 282 (Tex. 1939) (driver
detoured from mission to obtain supper); International & G.N.R. Co. v. Anderson, 17 S.W. 1039
(Tex. 1891) (railroad brakeman had no implied authority to eject passengers).
6. In response to Arbelaez's use of this evidence, Just Brakes states that it "disputes the
'inference[s]' [Arbelaez] attempts to draw" from Just Brakes' corporate representative's testimony. 
This, however, ignores that every reasonable inference must be indulged in favor of Arbelaez and
any doubts resolved in her favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 549 (Tex. 1985).
7. We have been unable to find a single case in Texas jurisprudence that supports the
proposition that an employee is not within the course and scope of employment when the employee
carries out the express instructions of his employer in an activity that benefitted, even indirectly, the
employer's business. The closest case is Brown v. American Racing Equipment, Inc., 933 S.W.2d
734, 735 (Tex. App.--San Antonio 1996, no writ), where an employee on his lunch break performed
a "favor" for his manager. In Brown, however, the employee was exceeding the scope of his
manager's authorization when the accident occurred. Id. at 736. The court held that the employee
was not within the course and scope of his employment because there was no evidence that the
employee was authorized to act as he did. Id.
8. In Mitchell v. Ellis, the employee deviated from his delivery duties to purchase cigarettes; 
after exiting his vehicle, he crossed a street negligently, causing an accident. 374 S.W.2d 333, 335
(Tex. App.--Fort Worth 1963, writ ref'd).
9. Just Brakes also argues that Paul's actions did not constitute a "special mission" on behalf
of Just Brakes. See, e.g., Upton v. Gensco, Inc., 962 S.W.2d 620, 622 (Tex. App.--Fort Worth 1997,
pet. denied); J&C Drilling Co. v. Salaiz, 866 S.W.2d 632, 636 (Tex. App.--San Antonio 1993, no
writ). Because the special-mission doctrine is only applied in commuting cases and Paul was not
commuting, but was already at work when his manager instructed him to make the breakfast run, we
conclude that it is unnecessary to engage in a special-mission analysis. See, e.g., Upton, 962 S.W.2d
at 622; Salaiz, 866 S.W.2d at 636.