**Antonia Bonita DuBOSE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–88–154 CR.**

Court of Appeals of Texas,
Beaumont.

June 21, 1989.

---

5. U.S. CONST. art. I, § 10; TEX. CONST. art. I, § 16.

William W. Burge, Houston, for appellant.

Patrick O. Hardy, Woodville, for State.

## OPINION

DIES, Chief Justice.

Appellant was charged with murder, and a jury convicted her of voluntary manslaughter and assessed punishment at twenty years' confinement in the Texas Department of Corrections. Appeal has been perfected to this court.

Appellant's first three points of error all contend the court erred in admitting hearsay testimony over Appellant's objection. There is no question that some damaging hearsay testimony was admitted by the court, but the State contends it offered the testimony, not to prove its truth, but to show that the words were said. And the court so charged the jury.

*1A R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL sec. 781, p. 2* (Texas Practice 3rd ed. 1980) follows:

> "The principle embodied in the hearsay rule is simple, but is often obscured by loose language, with the result that it is frequently misconceived as a rule which purports to exclude any reports by a witness of statements made out of court. Our decisions are replete with a myriad of instances where contentions based upon that mistake have been overruled. The rule in truth is this: evidence of a statement made out of court when such evidence is offered for the purpose of proving the truth of such previous statement, is inadmissible as hearsay. *It is obvious that such statements may be offered in evidence for a great number of other purposes than establishing the truth of the statement and whenever this is so the evidence is not hearsay and some other ground for its exclusion must be sought."* (original emphasis deleted, ours added)

However, a legitimate purpose for the otherwise inadmissible hearsay evidence must be established. The State argued forcibly at oral argument that all it needed to state to the court to exclude hearsay objection was that it was being offered only to show that the statement was made. If this be the law, the hearsay rule might just as well be abolished for such an argument is pure sophistry. These points are sustained.

Appellant has other points which we find are without merit and they are overruled.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

Reversed and Remanded:

BROOKSHIRE, Justice, concurring.

By indictment the Appellant was charged with murder. She was charged with shooting and causing the death of her then husband, Ceslie Ben DuBose, by shooting him with a shotgun. A jury convicted her of voluntary manslaughter and assessed punishment at 20 years confinement in the State Department of Corrections. The first three points of error are that the trial court had committed reversible error in admitting over objection the hearsay testimony of the three witnesses.

The first testimony complained of and challenged by the Appellant was that of a dispatcher. The deceased was a jailer in

the Woodville, Tyler County, Jail. The challenged and objected-to testimony is this:

"Q. Now did you ever have an occasion to see Ces Dubose with his eye banged up or bruised or anything of that nature?

"A. He came to work with, you know, it wasn't really like a black eye or anything, but you could tell he had been hit in the face.

"Q. Did he say who hit him?

"MR. CLARK: I object. It calls for a hearsay answer.

"THE COURT: Sustained.

"MR. HARDY: Your Honor, I would offer it not for the purpose of the truth but for the purpose to show these words were said just like he's been doing.

"THE COURT: They'll be received for that limited purpose.

"Q. For that limited purpose, Dee Ann, what did Ces tell you? What did he say to you as far as his eye being bruised up?

"A. He told me that he had worked a graveyard and he had came in and went to bed. And he said he was in the bed asleep and said somebody—he woke up and somebody was hitting him in the face. And he said he just took a swing and hit whoever it was. And whenever the lights were turned on, it was Toni.

"Q. Did he ever say that he was afraid of Toni?

"A. Not to me.

"MR. CLARK: I object to that until he can preface it for the limited purpose.

"THE COURT: Sustained.

"MR. HARDY: Anything like that is for a limited purpose just to show what was said. She stated that was not said to her. Pass the witness."

Another witness was Molly Cowart. She was a dispatcher in the Sheriff's office in the Woodville Courthouse in Tyler County. Her testimony that was challenged was:

"Q. What is your occupation, Molly?

"A. I'm a dispatcher for the Sheriff's office in Woodville, Tyler County.

"Q. How long have you been a dispatcher with Tyler County, Texas?

"A. Six years.

"Q. Okay. Now did you or not on occasion see Ces DuBose with his back all scratched up and infected?

"A. Yes, I did.

"Q. What did he say happened and how he got that?

"MR. CLARK: Objection. Calls for a hearsay answer.

"THE COURT: Sustained.

"MR. HARDY: This is for the limited purpose the words were said and not for the truth.

"THE COURT: Be received for that limited purpose and for no other purpose.

"A. Okay. Ces was moving around in the chair a lot. And I asked him what was the matter. He told me his back was infected where Toni had scratched his back. He told me that he didn't like to pull his shirt off.

MR. CLARK: I object to any further testimony. He asked her about back scratches.

"Q. What else did he tell you?

"A. He told me that Toni had scratched his back. He told me that he did not like—

"MR. CLARK: I object to her going any further than that.

"THE COURT: Sustained. Please don't answer unless you're specifically asked.

"Q. What did Ceslie tell you about Toni and scratching his back?

"A. He told me that they got in an argument when he—

"MR. CLARK: I object to that as a hearsay answer, your Honor.

"THE COURT: Sustained.

"MR. HARDY: Judge, this is all for the limited purpose of showing what the man said.

"THE COURT: It will be received for that limited purpose only.

"MR. HARDY: Go ahead and answer the question.

"A. He told me that when he got home from work that morning that this happened, that they got in an argument. He had worked the graveyard shift. He

went to bed. He said he had been in the bed a couple of hours and he got woke up. She was pounding him in the back and scratching him in the back.

"MR. HARDY: Pass the witness."

Ceslie DuBose had been previously a deputy sheriff in Tyler County but at the time of his death was acting as a jailer.

The third witness was James Lee Chapman. His occupation was that of deputy sheriff in Tyler County.

"Q. How long have you worked as a deputy?

"A. A little over three years.

"Q. Did you or not work with Ces Du-Bose during that time?

"A. I did.

"Q. Now for the limited purpose of just what he told you, not necessarily for the truth, but did Ces DuBose ever tell you that Toni DuBose had pulled a gun on him?

"A. He did.

"Q. Did he say or not say how this had come about?

"A. He said he woke up one day and she had a gun pointed on him.

"MR. CLARK: I object to the hearsay nature. He asked him a question about—

"THE COURT: Sustained.

"MR. HARDY: Your Honor, once again, this is for the limited purpose of showing what the man said to him and not the truth of the statement.

"THE COURT: It will be received for that limited purpose, and the jury is again instructed to that effect.

"Q. What did he tell you that the—what did Ces DuBose tell you the reason Toni DuBose pulled a gun on him?

"A. He never stated a reason.

"Q. What did he say happened?

"A. He said he woke up one day and she was pointing a gun at him.

"Q. Now, once again for the limited purpose of what the man told you, not necessarily for the truth of it, did he ever make any statement to you about someone beating their wife or about beating any woman?

"A. Yes, he did.

"Q. What was that statement?

"A. Said he wouldn't live with a woman he had to whip.

"MR. HARDY: Pass the witness, your Honor."

Notice that in the question to Deputy Sheriff Chapman that the District Attorney, when asking the question, said:

"[O]nce again for the limited purpose of what the man told you, not necessarily for the truth of it, did he [the deceased] make any statement to you about someone beating their wife or about beating any woman?"

That question, it seemed, did not entirely eliminate the truth of the statement from the consideration of the jury. The prosecutor repeatedly said, in substance, that the proffer was for the limited purpose that the words were said, and not for the truth. Traditionally, I think that offering the words merely to prove the fact that those words were spoken is a concept usually put into play to show that the speaker or the declarant had the power of speech. In other words, the speaker could speak those words. That is the generally accepted logical concept. Also, of course, generally the words could be offered to show that the hearer; that is to say, the witness in court, had the power of hearing and could discern the words spoken.

I do not understand fully the so-called limited purpose. Nor do I comprehend that a legitimate limited purpose—considering the words and testimony in evidence before the jury—had been shown by the state. The nature of the testimony and the words used in the answers, it seems to me, clearly demonstrates that the truth of the words of the deceased jailer was being placed before the jury for its consideration. Of course, it is a hackneyed statement to say that there is absolutely no opportunity to cross-examine the deceased.

Nor, as I read the challenged evidence, was it realistically offered to tend to show state of mind of the deceased. The Court of Criminal Appeals has held that hearsay statements of the deceased have been held

inadmissible in uxoricide trials. *See Jones v. State*, 515 S.W.2d 126 (Tex.Crim.App. 1974). All of the statements made by the deceased jailer were definitely outside of the Appellant's presence. And even on a tender of hearsay or statements made out of the presence of the defendant, to tend to show the state of mind of the deceased, then the deceased would have had to actually believed the statements. In other words, the state of mind could not be imputed to the deceased without his believing the statements and tendering the statements for the truth thereof because the truth thereof would tend to prove his actual state of mind. *See Jones v. State, supra. See Erwin v. State*, 531 S.W.2d 337 (Tex.Crim.App.1976).

I think that the several witnesses' testimonies concerning the proffered and purported statements made by the deceased jailer as to assaults, threats, and other acts that were committed on and against him by the Appellant, under this record, would simply not be relevant unless they were proffered and tendered for the actual truth of the statements.

It is trite and even nauseous repetition to state that the deceased was not under oath when he made the statements. There was no opportunity to cross-examine him, which the foremost writers on the law of evidence say is the efficacious tool or instrument of getting at the truth. Furthermore, the prosecutor never did effectively or in a meaningful way *limit, actually limit*, the effect of the hearsay statements for purposes of the jury.

Moreover, in the argument of the State, the prosecutor stated:

"And the defense asks you not to believe what this dead man said to them [referring to the witnesses], but to believe supposedly everything Toni DuBose says that he said to her.

"Well, you can't do both, Ladies and Gentlemen, because if Ces DuBose is a liar, let's not believe anything he says. Or if Toni DuBose is a liar, let's not believe anything she says.

"Who does that leave and what does it leave? That leaves the pictures. That leaves the pathologist. . . . "

The State argued that the jury should believe the three witnesses and thereby believe, by reasonable inference, the unsworn, unexamined, uncross-examined statements of the deceased.

A main thrust of the defense was that there was a history of physical and mental abuse and threats on the part of Ceslie Ben DuBose toward the defendant, Antonia (Toni). Such abuse necessitated Antonia leaving the deceased on three or four occasions. These leave-takings were also due to threats to kill and threats to physically harm Antonia as well as actual verbal abuse. A further defense was to the effect that, on the night in question, it was contended that the deceased heaped further abuse on Antonia and she was instructed to take her child, four-year old Ashley, and leave. Antonia then went to the bathroom. While she was in the bathroom she determined that she would make a try to get out. She took the keys off of a dresser, unlocked a gun cabinet, reached into the cabinet and got a gun. She pointed it at him, or down towards the deceased, and told him to stay put until she could get out. The defense contended that, at that time, the deceased made a lunge towards Antonia and that she closed her eyes and pulled the trigger. Two shotgun shells were fired. Antonia further contended that she did not realize she pulled the trigger twice, but that she did hear two "pops". Further, she said she did not know anything about shotguns or guns in general and she did not know that the gun was fully loaded. Antonia also contended that she then grabbed her daughter, Ashley, but took no clothes and left. Antonia left her eyeglasses at the house and she drove straight to her older daughter's house in Vidor, Texas, in Orange County. Antonia took the position that she could not even remember driving any of those miles to Orange County. Other contentions were made, generally showing that the deputy-jailer was aggressive and was abusive, in many ways, towards Antonia and that he had been drink-

ing and that Antonia was the victim up until the shotgun discharged.

The defense tendered witnesses that testified to various times and occasions when they had seen bruises on Antonia. The witnesses also testified that they knew of fights between the deceased and the Appellant. One witness testified that she heard a fight going on in a back bedroom and later saw bruises on the left eye of Antonia. There was evidence of the deputy's excessive drinking habits. One witness testified to having seen the deceased drunk on occasions and another also gave testimony of extreme verbal abuse towards Antonia and that the deceased had called the Appellant a bitch and a whore and said that she had been sleeping around and had had affairs, accusing her of much other misconduct. A daughter of the Appellant testified that she heard the deceased threaten death to her mother if her mother ever tried to leave.

Furthermore, the out-of-court statements attributed to the deceased deputy did not constitute a part of the circumstances surrounding the killing. They were made long before the killing. They are not admissible under *TEX. PENAL CODE ANN. sec. 19.06* (Vernon 1989).

In sum, I think that the objected-to out-of-court statements made by the deceased deputy relating to the assaults and misconduct and physical abusive actions of the Appellant toward the deceased were hearsay. 1A R. Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL, sec. 781 (Texas Practice 3d ed. 1980) states:

"The rule in truth is this: evidence of a statement made out of court *when such evidence is offered for the purpose of proving the truth of such previous statement,* is inadmissible as hearsay...." (Emphasis theirs)

It appears obvious that the truth of the previous out-of-court statements was what would have an important impact on the jury. There were several sound reasons for the hearsay rule. A jury or any trier of fact has an opportunity to observe the demeanor of a witness on the stand and are thus in a superior position to judge his or her credibility. This factor is lacking in the case of an out-of-court statement. Furthermore, the value of an assertion as evidence of its truth is very much dependent on the declarant's powers of observation, his memory, his sincerity, and his ability to accurately express a belief or fact or to accurately recount and narrate an occurrence. Those capacities and abilities of the declarant, may be assessed more accurately when tested by cross-examination.

Another safeguard is the oath. The declarant was not under oath. Dean Charles T. McCormick, an expert on the law of evidence, has concluded that cross-examination is the essential tool to hammer out the truth. 1 McCormick and Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL, sec. 782 (Texas Practice 2d ed. 1956). Inasmuch as a defense of the Appellant was self-defense and her tactic and posture at trial was that she was the victim, the non-aggressor and non-assaulter (at least up to the point and the second of time when the shotgun was fired twice); I cannot say that this error in admitting hearsay evidence before the jury made no contribution to the conviction or to the punishment. This we are required to do under *TEX.R. APP.P. 81(b)(2).*

The review under *TEX.R.APP.P. 81(b)(2)* is not without difficulty. The Rule puts stringent and strident parameters on this Court.

A more workable, practicable and fair rule to both sides of the litigation, at least under a record such as this, would be for the appellate court to consider the nature of the testimony in light of the entire record and thereby determine whether the hearsay evidence was not reasonably calculated to injure the substantive rights or the procedural rights of the Appellant. *See O'Neal v. State,* 421 S.W.2d 391 (Tex.Crim. App.1967). Nevertheless, I concur.