# NO. 12-22-00297-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHERYL JACKSON AND JOHN HARMON, APPELLANTS* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW NO. 2* |
| *MEGAN JOHNSON, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Cheryl Jackson and John Harmon appeal the trial court's judgment entered in favor of Appellee Megan Johnson. Appellants raise five issues on appeal. We affirm in part and reverse and render in part.

## BACKGROUND

Johnson suffered injuries after she was attacked by two pit-bull dogs in rural Smith County, Texas. Appellants are the owners in joint tenancy of neighboring property, and the dogs were kept with Jackson's permission on the property for a period of months prior to the attack.

Jackson filed the instant suit against Appellants, in which she alleged that they were liable for her injuries under strict liability and negligence theories because they owned or possessed the dogs at issue. The matter proceeded to a jury trial, and, ultimately, the jury found that Jackson owned or possessed one or more of the dogs at issue but Harmon did not. The jury further found that both Jackson's and Harmon's negligence proximately caused Johnson's injuries and that such injuries were ninety percent attributable to Jackson's negligence and ten percent attributable to Harmon's. The jury awarded Johnson damages for physical pain and suffering, mental anguish, physical impairment, and disfigurement. This appeal followed.

## MATERIALITY OF NEGLIGENCE FINDING - HARMON

In their first issue, Appellants argue that the trial court erred in overruling their motion for judgment notwithstanding the verdict (JNOV) and motion for directed verdict because the jury's finding in response to Question 1 that Harmon did not own or possess the dogs that attacked Johnson negates the jury's negligence finding as to Harmon as a matter of law. In other words, they contend that such a finding rendered immaterial the jury's finding in response to Question 5 that Harmon's negligence proximately caused Johnson's injuries.[1]

## Preservation of Error

Johnson initially responds that Harmon failed to preserve error regarding the trial court's denial of his motion for directed verdict and cannot complain of the trial court's denial of a motion JNOV in which he did not participate. Indeed, the record reflects that the motion JNOV only was filed on Jackson's behalf and that Appellants failed to re-urge their motion for directed verdict after presenting evidence. *See* ***1986 Dodge 150 Pickup Vin No. 1B7FD14T1GS006316 v. State***, 129 S.W.3d 180, 183 (Tex. App.–Texarkana 2004, no pet.) (if party proceeds to present evidence after that party moved for directed verdict, such party must re-urge motion for directed verdict at close of case or any error in its denial is waived). However, Appellants did raise this argument in their motion for new trial. Therefore, we conclude that Appellants preserved this issue for review. *See* TEX. R. APP. P. 38.1(f) (statement of an issue will be treated as covering every subsidiary question that is fairly included); ***BP Am. Prod. Co. v. Red Deer Res., LLC***, 526 S.W.3d 389, 402 (Tex. 2017) (error preserved on immateriality issue by raising matter post-verdict in motion for new trial).

## Immateriality of Jury Question

We review a trial court's decision to overrule a motion for new trial for abuse of discretion. *See* ***Limestone Const., Inc. v. Summit Commercial Indus. Props., Inc.***, 143 S.W.3d 538, 542 (Tex. App.–Austin 2004, no pet.). Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily or unreasonably. ***Flowers v. Flowers***, 407 S.W.3d 452, 457 (Tex. App.–Houston [14th Dist.] 2013, no pet.).

---

[1] Appellants do not couch their argument in terms of the "materiality" of the subsequent jury finding. But because we must construe liberally the briefing rules in the interest of justice, we address the issue in such terms as a reasonable interpretation of Appellants' argument under this issue. *See* ***Liptak v. Richard E. Colgin I, Ltd***, No. 05-99-00583-CV, 2002 WL 1263981, at *5 (Tex. App.–Dallas June 7, 2002, pet. denied) (op. on rehearing).

A jury question is immaterial when (1) the question should not have been submitted; (2) the question calls for a finding beyond the province of the jury, such as a question of law; (3) the question was properly submitted but has been rendered immaterial by other findings; or (4) the answer to the question cannot alter the effect of the verdict. *Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995); *Brazos Contractors Dev., Inc. v. Jefferson*, 596 S.W.3d 291, 306 (Tex. App.–Houston [14th Dist.] 2019, pet. denied). Because "immaterial answers cannot support a judgment," the jury's response to an immaterial question properly is disregarded. *BP Am. Prod. Co.*, 526 S.W.3d at 402.

Johnson responds that ownership or possession need not always be proven to support the existence of a legal duty in a dog-bite case. In support of this proposition, she cites to cases in which the courts held that there exists a duty of care on behalf of an out-of-possession landlord who has (1) actual knowledge of a dog's vicious propensity and (2) has the ability to control the premises. *See, e.g.*, *Bolton v. Fisher*, 528 S.W.3d 770, 775 (Tex. App.–Texarkana 2017, pet. denied) (citing *Batra v. Clark*, 110 S.W.3d 126, 127 (Tex. App.–Houston [1st Dist.] 2003, no pet.)). In this case, the record reflects that Harmon and Jackson own the property as cotenants rather than Harmon's being an out-of-possession landlord. Nonetheless, the question remains as to whether these cases are analogous enough to the facts in this case to create a duty as a matter of law on Harmon's part. Therefore, with that question yet unresolved, we conclude that the jury's finding that Harmon neither owned nor possessed the dogs at issue did not render immaterial the jury's finding that his negligence proximately caused Jackson's injuries. Accordingly, we hold that the trial court did not abuse its discretion in overruling Appellants' motion for new trial on this ground. Appellants' first issue is overruled.

## EVIDENTIARY SUFFICIENCY - NEGLIGENCE

In their second issue, Appellants argue that there is legally insufficient evidence[2] to support the jury's finding that either of them owned or possessed the dogs in question and, thus, there is insufficient evidence to support the jury's negligence finding.

---

[2] Appellants also make reference to the factual sufficiency standard of review. However, their argument regarding the sufficiency of the evidence supporting their respective ownership or possessions of the dogs at issue continually and consistently is made in terms of "no evidence" or that the evidence of ownership or possession of the dogs conclusively is established to reside in another person. These are legal sufficiency arguments. *See City of Keller v. Wilson*, 168 S.W.3d 802, 809 (Tex. 2005).

**Standard of Review**

In determining the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 809 (Tex. 2005). We view the evidence in the light most favorable to a finding and indulge every reasonable inference to support it. *Id.* at 822. We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. We are mindful that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *See Gator Gone Safety Pilots v. Holt*, 622 S.W.3d 524, 535 (Tex. App.–Houston [14th Dist.] 2021, no pet.). Ultimately, as long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the fact finder. *City of Keller*, 168 S.W.3d at 822.

Circumstantial evidence often requires a factfinder to choose among opposing reasonable inferences. *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001). The material fact must be reasonably inferred from the known circumstances. *Id.* "By its very nature, circumstantial evidence often involves linking what may be apparently insignificant and unrelated events to establish a pattern." *Id.* Thus, each piece of circumstantial evidence must be viewed not in isolation, but in light of all the known circumstances. *Id.* We are mindful that the jury is "entitled to consider the circumstantial evidence, weigh witnesses' credibility, and make reasonable inferences from the evidence it chooses to believe. *See Primoris Energy Services Corp. v. Myers*, 569 S.W.3d 745, 757 (Tex. App.–Houston [1st Dist.] 2018, no pet.).

**Evidence at Trial**

In the instant case, the record reflects that Jackson and Harmon owned the property as joint tenants. Harmon used the property to park several 18-wheelers and trailers he owned; Jackson kept two horses there and fed them daily. In January 2019, two adult pit-bull dogs—a brown female named Hershey and a gray-and-white male named Benjamin—were placed on the property with Jackson's permission. At trial, Jackson acknowledged that the timing of the dogs' being

placed on the property was not coincidental in light of recent vandalism to one of Harmon's18-wheeler tractors.

On March 10, 2019, less than two months before the incident at issue, Benjamin attacked a neighboring property owner, Debbie Raulston, who was walking up Appellants' driveway to speak to Jackson about a dog, which apparently roamed onto Raulston's property and had puppies under her house. As Raulston approached, Benjamin and another dog charged her and attacked her. According to Jackson, she was feeding her horses when she heard the dogs barking and ran in the direction of the barking where she saw that Benjamin had Raulston's pants leg in his teeth. But Jackson claimed she did not know until the next day that Benjamin actually bit Raulston during the attack.

Raulston reported the attack to Smith County Animal Control. In response, Animal Control Officer Cody Taylor investigated the incident and prepared a report. Raulston reported to Taylor that Benjamin bit her and broke the skin. According to Taylor's report, Raulston stated that Jackson owned Benjamin, who was dragging a chain at the time of the attack. Thereafter, Taylor contacted Jackson and issued a warning to her for her failure to comply with the Smith County leash ordinance.[3] Taylor also requested that Jackson produce a photo of Benjamin along with any veterinary records of his rabies vaccinations. In response, Jackson sent a photo of Benjamin to Taylor. Further, Jackson and her daughter took Benjamin to a veterinarian for vaccinations and forwarded vaccination records to Taylor.

Thereafter, in March 2019, Jackson purchased a collar and a heavy chain, which she used to chain Benjamin to one of Harmon's 18-wheeler tractors parked on the property. Around that time, her son built an enclosure on the property for Hershey, because she was in heat and needed to be kept separate from male dogs.

On May 5, Johnson was in Tyler, Texas to visit family with her two children—three-year-old Matthew and one-year-old Cora. Johnson, her two children, Johnson's mother-in-law Elizabeth, and Elizabeth's nine-year-old son, Austin, traveled to rural Smith County together to visit Johnson's grandmother-in-law, Debra Reynolds, and great-grandmother-in-law, Joyce Jones,

---

[3] The ordinance in question, which was introduced into evidence, requires that (1) dogs be restrained by their owner, regardless of whether the dog or the owner resides in the neighborhood and regardless of the owner's knowledge or mental state and (2) "a dangerous dog or a dog that is a danger to other animals must be restrained at all times by a secure leash or in a secure enclosure. "Owner" is defined under the ordinance as "a person, or persons, who harbor, shelter, keep, manage, possess, or has any interest in any dog."

who lived together in a home located across the road from Appellants' property. During the visit, Austin asked if he could retrieve his iPad from the car parked outside. Johnson was concerned about Austin's going outside in the country by himself, so she followed him to see if he needed any help.

When Johnson stepped outside, she saw Austin standing motionless. She moved to stand next to Austin and heard a growling noise, at which point she saw a brown, adult pit bull stand up and, suddenly, charge at Austin. Johnson testified that of the three dogs she saw, the two that attacked her and Austin were the brown pit bull, later identified as Hershey, and a gray-and-white pit bull, later identified as Benjamin.[4]

Johnson testified that she pushed Austin out of the way, and Hershey latched onto her leg with her teeth and began pulling her. Johnson backed up against the house's brick wall to brace herself as Benjamin bit into her other leg, as she attempted to ward off the attack. Ultimately, a neighbor observed the maelstrom and fired a gun, which distracted the dogs long enough for Johnson to retreat to the safety of the house.

Smith County Animal Control Officer Erica Rooney responded to the incident and arrived just as Johnson was being taken by ambulance to the hospital. Rooney prepared a report based on her investigation. According to her testimony, when she arrived on the scene, she saw two dogs lying in the grass at the back of the house, one of which was Benjamin. Rooney and a Smith County Sheriff's Deputy began to walk toward the dogs to attempt to capture them so they could conduct the necessary bite investigation; however, as soon as they moved toward the dogs, the dogs charged at them. As the dogs got closer to the officers, the deputy shot Benjamin in the leg, and both dogs ran away. Rooney called for backup to assist her in apprehending the dogs.

Taylor responded to the scene and assisted Rooney. According to Taylor, he recognized Benjamin as the same dog which attacked Raulston. Benjamin later was located on Appellants' property hiding under Harmon's 18-wheeler trailer with a gunshot injury and, eventually, was apprehended.

**Governing Law**

The Texas Supreme Court has determined that negligence can be an appropriate theory of

---

[4] Because the dogs were identified as Hershey and Benjamin, for ease of reference, we refer to these two dogs by name, even though Johnson's testimony refers to them by a general description.

recovery in a personal injury action involving an animal.[5] *See Marshall v. Ranne*, 511 S.W.2d 255, 258–59 (Tex. 1974); *Muela v. Gomez*, 343 S.W.3d 491, 496 (Tex. App.–El Paso 2011, no pet.); *see also Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 665 (Tex. App.–Waco 2002, no pet.). Ordinarily, to recover on a negligence claim arising from a dog bite, a plaintiff must prove: (1) the defendant owned or possessed an animal; (2) the defendant owed a duty to exercise reasonable care to prevent the animal from injuring others; (3) the defendant breached that duty; and (4) the defendant's breach proximately caused plaintiff's injury. *Gomez*, 343 S.W.3d at 496; *Allen*, 97 S.W.3d at 660. Unlike strict liability claims, to prevail in a negligence action the plaintiff does not have to prove that the animal was vicious or dangerous. *Gomez*, 343 S.W.3d at 496; *Allen*, 97 S.W.3d at 660; *Dunnings v. Castro*, 881 S.W.2d 559, 562–63 (Tex. App.–Houston [1st Dist.] 1994, writ dism'd). Thus, one who owns or possesses a dog may be liable for injuries caused by the dog even if the animal is not vicious, so long as the plaintiff can prove the owner's negligent handling or keeping of the animal caused the injury. *Gomez*, 343 S.W.3d at 497. Liability also may arise for injuries the dog inflicts, as in the instant case, while off the owner's property, if it is shown that the owner had actual or constructive knowledge that would "put a person of ordinary prudence on notice that permitting his dog to run at large might cause injury to another." *Id.*

**Jackson's Ownership or Possession of Dogs at Issue**

Appellants first argue that there is no evidence that Jackson owned or possessed the dogs at issue on the day of the incident. Instead, they argue that the evidence conclusively proves that Donnavon Reese, an acquaintance of Jackson's, owned the dog. However, Jackson's testimony supports that from January 2019 until approximately two weeks before the incident in question, she kept Benjamin and Hershey on her property. She specifically stated that Benjamin lived on the property and ate on the property. She testified that she took Benjamin to the veterinarian, purchased a collar for him, and chained him to the 18-wheeler tractor on the property. Moreover, she testified that her son built a fenced enclosure for Hershey to keep her away from male dogs and, at one point, when it was freezing outside, she set up an igloo-style enclosure to protect Hershey and her puppies from the cold.

---

[5] A person injured by a dog bite may sue the owner in strict liability or negligence. *Muela v. Gomez*, 343 S.W.3d 491, 496 n.2 (Tex. App.–El Paso 2011, no pet.). An owner of a vicious animal may be strictly liable for damages while an owner of a non-vicious dog may be liable for negligent handling. *Bushnell v. Mott*, 254 S.W.3d 451, 452 (Tex. 2008). Here, Johnson pleaded both theories of recovery. Appellants' arguments on appeal are limited to the jury's negligence finding.

On cross examination, however, Jackson testified that she never took dog food to the property, nor did she put water in the dogs' bowls. She further testified that Benjamin went missing from her property approximately two weeks before the incident. Thus, Appellants contend that she did not possess him after that time. However, neither Jackson's testimony nor any other evidence indicates that Hershey also went missing at this time, and Jackson testified that Hershey still lived on her property at the time of trial.

In Question 1, the jury found that Jackson owned or possessed *one or more* of the dogs at issue in this case. In conjunction with this question, the jury was instructed that "possess" means "care, custody, control, or management."[6] "Custody" means the "state of being detained." *Custody*, THE AMERICAN HERITAGE DICTIONARY (2d College ed. 1982). Here, the record reflects that Benjamin went missing from the property approximately two weeks before the incident. There is no evidence that Hershey went missing at this same time. Jackson testified that she was the only person who regularly visited the property and that she did so daily to feed her horses. There is no evidence that Reese ever came to the property to check on the dogs or care for them in any way. Furthermore, the record is clear that Hershey was kept in a fenced enclosure on the property, a state of *detention*. *See id.* Furthermore, the jury was entitled to conclude, based on the testimony that Hershey resided in that fenced enclosure for months prior to the incident and remained on Jackson's property following the incident up to the time of trial, that Jackson retained custody of Hershey even after Benjamin went missing.[7] *See Lozano*, 52 S.W.3d at 148; *Myers*, 569 S.W.3d at 757. Lastly, Jackson gave conflicting testimony about whether she provided food or water for Benjamin. The jury, as sole judge of the credibility of witnesses, was entitled to find that she did, in fact, feed Benjamin during the period of months he lived on the property and, reasonably could find, based on her testimony about the other ways she cared for Hershey, that she did not deprive

---

[6] Appellants do not challenge this definition of "possess" on appeal.

[7] Appellants make no argument that Hershey was missing for any period of significance so that the jury only could find that she must be considered "dispossessed" by Jackson. Of course, there is evidence both dogs were not on the property and, thus, out of Jackson's custody at some point in time on the date of the incident because it is undisputed that on that day, each participated in the attack on Johnson at Reynolds's and Jones's property. Appellants have not cited, nor is this court aware, of any authority upholding a finding that a dog, which has gone missing for a certain period of time before an off-premises attack, is found to have been "dispossessed." And doubtlessly, a person who owns or possesses a dog, which eludes custody and attacks another away from the person's property, still may be subject to liability for negligence. *See, e.g.*, *Turner v. Duggin*, 532 S.W.3d 473, 486 (Tex. App.–Texarkana 2017, no pet.). But since "possession" was presented as a question of fact to the jury, we conclude that the matter of whether such possession is nullified after the animal goes missing for a certain period of time is part-and-parcel to the jury's determination of the primary issue of "possession."

Hershey of food and water while providing the same to Benjamin.[8]

We have reviewed the evidence in the light most favorable to the jury's finding and have indulged every reasonable inference to support it. *See* **City of Keller**, 168 S.W.3d at 822. Based on our review, we conclude that because the evidence at trial as to Jackson's possession of Hershey amounted to more than a mere scintilla, the jury reasonably could find Jackson "possessed" one or more of the dogs at issue in this case. *See* **id.** at 810. Therefore, we hold that the evidence is legally sufficient to support the jury's finding in response to Question 1 as to Jackson. To the extent that it relates to Jackson's liability for negligence, Appellants' second issue is overruled.

**Harmon's Liability for negligence**

Turning to the question of Harmon's negligence, as set forth above, the jury found that he did not own or possess the dogs at issue. But as we noted previously, such a finding is not, without further analysis, determinative of the issue of his negligence. As we discussed, Johnson argues that this case is analogous to that of an out-of-possession landlord, who neither owns nor possesses a dog, but who can be held liable for negligence resulting from a tenant's dog, which attacks another, where the landlord (1) had actual knowledge of the dog's vicious propensity *and* (2) has the ability to control the premises. *See, e.g.*, **Bolton**, 528 S.W.3d at 775 (citing **Batra**, 110 S.W.3d 127).

In the case at hand, the record reflects that Harmon and Jackson own the property as cotenants. A cotenant neither is a partner with nor an agent of the other cotenant, and generally, in absence of express authority, cannot act for the other cotenant. **Dearman v. Dutschmann**, 739 S.W.2d 454, 456 (Tex. App.–Corpus Christi 1987, writ denied). Moreover, a cotenant may not interfere with another cotenant's ownership and enjoyment of the property. **Id.** Often, "control"

---

[8] In their brief, Appellants assert that the "evidence was clear and undisputed that at the time of the incident and for some time prior thereto, Reynolds and/or Jones were actually in possession of all the animals involved in the incident . . . [and] were actually feeding and caring for the animals on the Reynolds/Jones Property[.]" Appellants provide no citation to the record in support of this assertion. *See* TEX. R. APP. P. 38.1(i). Appellants appear to be referring to an exhibit they offered consisting of a medical record for Johnson, which states, "Patient was left feeling insignificant as a result [of a dog bite incident] because when the sheriff's office came to get the dogs so the patient could be treated[,] all the grandmother in law could say was 'don't hurt my dogs' *even though they were not her dogs.*" (emphasis added). Johnson testified that she did not hear her grandmother make any such statement, that her grandmother suffers from mental illness, and that she sometimes says things that do not make sense. She also testified that her grandmother has two dogs, which reside inside her house. There also is evidence that Reynolds and/or Jones put food outside their house, but Johnson testified that the food was for wild animals, such as racoons, and that the food was not intended for the dogs at issue. Assuming arguendo that this is, in fact, the evidence to which Appellants refer, we cannot conclude that it amounts to "clear and undisputed" proof that the dogs were possessed by Reynolds and Jones, which the jury could not disregard.

can be demonstrated by "ownership, occupation, management, or possession of property." ***Holland v. Mem'l Hermann Health Sys.***, 570 S.W.3d 887, 897 (Tex. App.–Houston [1st Dist.] 2018, no pet.). Control also means the "power or authority to guide or manage." ***Bay, Inc. v. Ramos***, 139 S.W.3d 322, 326 (Tex. App.–San Antonio 2004, pet. denied). Here, Harmon's control was not exclusive, nor could it be exercised so as to interfere with Johnson's use of the property, insomuch as her use did not interfere with his own. *See **Dearman***, 739 S.W.2d at 456.

In sum, Harmon's ability to control Jackson's use of the property is not superior to her use and enjoyment of the property, and there is no evidence that her use of the property for keeping the two dogs at issue interfered with his use thereof. Thus, we conclude that even assuming arguendo that the instant case is analogous to the out-of-possession landlord cases Johnson cites, because Harmon lacked a superior ability to control the property on which the dogs were kept, the evidence is legally insufficient to support the jury's finding that his negligence, if any, proximately caused Johnson's injuries. To the extent that it relates to Harmon's liability for negligence, Appellants' second issue is sustained.

## HEARSAY - JACKSON'S TESTIMONY

In their third issue, Appellants argue that the trial court abused its discretion in sustaining Johnson's hearsay objection to Jackson's proffered testimony that when she noticed Benjamin was missing, she contacted Reese to ask if he knew the dog's whereabouts, and Reese told her he took care of it and gave the dog away.

## Standard of Review

Evidentiary rulings are committed to the trial court's sound discretion. ***Bay Area Healthcare Grp., Ltd. v. McShane***, 239 S.W.3d 231, 234 (Tex. 2007). We review a trial court's decision to admit or exclude evidence for an abuse of that discretion. ***In re J.P.B.***, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. ***Garcia v. Martinez***, 988 S.W.2d 219, 222 (Tex. 1999). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. ***Owens–Corning Fiberglas Corp. v. Malone***, 972 S.W.2d 35, 43 (Tex. 1998).

## Hearsay, Harm, and Hershey

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). The

proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence. ***Volkswagen of Am., Inc. v. Ramirez***, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

In the instant case, while Jackson was under direct examination, the following exchange took place:

> Q. Did you call Donnavon Reese and tell him the dog was missing?
> A. I called him and asked him --
>
> . . . .
>
> Q. Did you tell Donnavon Reese that the dog was no longer there and asked him where it was?
>
> [Johnson's Counsel]: Objection, Your Honor. Hearsay.
>
> [Appellants' Counsel]: Well, her calling and asking him what it was is not hearsay.
>
> THE COURT: I will sustain the objection.
>
> [Appellants' Counsel]: So you're saying her saying she called Donnavon Reese is hearsay?
>
> THE COURT: She is not a party opponent. What's the exception to the hearsay rule?
>
> [Appellants' Counsel]: She has personal knowledge she called Donnavon Reese.
>
> THE COURT: That doesn't make it an exception to the hearsay rule. Sustained.
>
> [Appellants' Counsel]: Well, it's not an exception, Judge, because it's not hearsay because she was actually the one that called and said --
>
> THE COURT: I sustained the objection . . . .

Later, Appellants made the following bill of exception:

> Q. Ms. Jackson, after you noticed that Benjamin was missing, what did you do?
> A. I went to Donnavon and asked him did he know where the dog was.
>
> [Johnson's Counsel]: Objection. Hearsay.
>
> THE COURT: For purposes of making a Bill of --
>
> [Appellants' Counsel]: What she says is not hearsay. She's here in court. It's not a statement by somebody else made out of court for --

THE COURT: I sustain the objection because I have not heard an exception to the hearsay rule. Made by your client. She's not a party opponent. It's offered for the truth of the matter asserted. What exception is there?

[Appellants' Counsel]: There is not an exception because it's not hearsay. I went outside and I saw the sun rise. That's not hearsay. I went to Joe Jackson and said, Hey. Your dog bit me. That's not hearsay. That's me talking.

THE COURT: Go ahead. Make your exception.

Q. (By [Appellants' Counsel]) Did you have a conversation with Donnavon Reese after the dog was missing?
A. Yes.

Q. What did you say?
A. I told him that the dog wasn't there, did he know where the dog was.

[Appellants' Counsel]: All right. That's not hearsay, Your Honor. That's a direct statement of a witness that was there that made the statement. That's not a statement that somebody made out of court for proving the truth of the matter stated therein. She made that statement in court. She made the statement. She told you she made the statement. Under no stretch of the imagination is that hearsay.

THE COURT: Your Bill of Exception has been recorded into the record.

[Appellants' Counsel]: All right. I would like to go further.

THE COURT: Go ahead.

Q. (By [Appellants' Counsel]) What did Donnavon tell you?
A. That he will take care of it.

Q. Did Donnavon -- when you told him the dog was missing, did he tell you that he knew the dog was missing?
A. He said he had given the dog way.

[Appellants' Counsel]: Now, the fact that they're going to object to -- You're objecting to Donnavon saying he gave the dog away as hearsay, correct?

[Johnson's Counsel]: I am very confused on what is going on now. If that was ever elicited, yes, I would object to hearsay because it is.

THE COURT: I don't think that was offered in front of the jury. The Court did not make a ruling with regard to that, but I believe that would be hearsay.

[Appellants' Counsel]: Then when the jury comes back, we will offer it. I will say that we are offering it not for the truth of the matter stated therein, but that the words were spoken, making it not hearsay.

. . . .

[Appellants' Counsel]: Your Honor, can we just have a ruling that that's not admissible, that he told her --
THE COURT: I will rule that that's hearsay. You may make a bill of exception --

[Appellants' Counsel]: May I have that as part of my bill?

THE COURT: Yes.

In sum, Jackson's testimony consists of two out-of-court statements: (1) her statement to Reese that the dog no longer was on her property and (2) Reese's response to her inquiry about whether he knew of the dog's whereabouts that he took care of it by giving the dog away.

As to Jackson's statement to Reese that the dog was missing, Appellants argued that it was not hearsay because she was a testifying witness and subject to cross examination. However, that a person is available to testify does not, by itself, render that person's out-of-court statement not hearsay. *See* TEX. R. EVID. 801(d). And, as Johnson noted at trial, Jackson's statement is not a statement by a party opponent. *See id.* 801(e)(2); ***Williams v. State***, 402 S.W.3d 425, 438 (Tex. App.–Houston [14th Dist.] 2013, pet. ref'd) (party cannot offer his own out-of-court statements under Rule 801(e)(2)).[9] Because Jackson's out-of-court statement to Reese that the dog was missing was offered to show the truth of that statement, i.e., the dog was missing, it is hearsay. *See* TEX. R. EVID. 801(d). Given that Appellants failed to articulate a valid, legal reason to the trial court to show how the statement was not hearsay or falls within an exception to the hearsay rule, we hold that the trial court did not abuse its discretion in sustaining Johnson's objection to this statement. *See **Ramirez***, 159 S.W.3d at 908 n.5.

Turning to Jackson's testimony about Reese's response, under Rule 801, an out-of-court statement is not hearsay if it has relevance apart from the truth of the matter that it asserts or implies. *See **Case Corp. v. Hi-Class Bus. Sys., Inc.***, 184 S.W.3d 760, 782 (Tex. App.–Dallas 2005, pet. denied). However, a party cannot turn hearsay into non-hearsay merely by asserting that the out-of-court statement is being offered only to show that it was made. *See **DuBose v. State***, 774 S.W.2d 328, 329 (Tex. App.–Beaumont 1989, pet. ref'd). The proponent must articulate a legitimate, non-hearsay purpose for offering the statement and demonstrate that the statement is relevant apart from the truth of its content. *See **id.*** (legitimate purpose for otherwise inadmissible hearsay evidence must be established; if proponent of such evidence only needs to argue that evidence was being offered "only to show that the statement was made[,] . . . the hearsay rule might just as well be abolished for such an argument is pure sophistry").

---

[9] Although criminal caselaw is not binding precedent in civil matters, we may rely on it as persuasive authority, particularly since civil and criminal cases are bound by the same rules of evidence. *See **Merrill v. Sprint Waste Servs. LP***, 527 S.W.3d 663, 670 n.5 (Tex. App.–Houston [14th Dist.] 2017, no pet.).

In the instant case, Appellants argued to the trial court that Reese's statement that he took care of the matter by giving the dog away is not hearsay because it was offered to demonstrate "that the words were spoken." Appellants repeat this argument on appeal. As set forth above, an out-of-court statement offered to demonstrate only that a statement was made or that "the words were spoken" does not render the statement non-hearsay. *See id.* Thus, we conclude that Appellants failed to meet their burden of demonstrating to the trial court that Reese's statement either was not hearsay or fell within an exception to the hearsay rule. *See Ramirez*, 159 S.W.3d at 908 n.5. Therefore, we hold that the trial court did not abuse its discretion in sustaining Johnson's hearsay objection as to Jackson's testimony about what Reese said to her.

Even assuming arguendo that the trial court abused its discretion in sustaining Johnson's objection since, arguably, Reese's statement might have been relevant, apart from its truth, to demonstrate that Jackson relied on it in concluding she no longer had any responsibility with regard to Benjamin, the outcome would not change. "To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was erroneous and that the error was calculated to cause, and probably did cause, 'rendition of an improper judgment.'" *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 879 (Tex. App.–Houston [1st Dist.] 2006, no pet.) (quoting TEX. R. APP. P. 44.1(a)(1); *Malone*, 972 S.W.2d at 43). In conducting this harm analysis, we review the entire record. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *Benavides*, 189 S.W.3d at 879. Evidentiary rulings do not usually cause reversible error unless an appellant can demonstrate that the judgment turns on the particular evidence that was admitted or excluded. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995); *Benavides*, 189 S.W.3d at 879. An error in the exclusion of evidence requires reversal if it is both controlling on a material issue and not cumulative. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994).

In the case at hand, Jackson's testimony about what Reese told her refers only to a single dog, which it is apparent from Appellants' brief, is Benjamin.[10] Yet, as set forth previously, Johnson testified that she was bitten by both Benjamin and Hershey. Thus, even had the jury been able to consider Jackson's testimony about Reese's statement and Jackson's potential reliance on that statement as it relates to the issue of possession or duty, because the statement related only to Benjamin, the jury still could have determined that Jackson was negligent as Hershey's possessor.

---

[10] At the outset of their statement of facts, Appellants refer to Benjamin as the "subject animal for this case."

Thus, we conclude that even if the trial court abused its discretion in sustaining Johnson's hearsay objections, Jackson was not harmed because she cannot demonstrate that the judgment turned on that particular evidence. *See Alvarado*, 897 S.W.2d at 753–54; *Benavides*, 189 S.W.3d at 879. Appellants' third issue is overruled.

## HEARSAY - TAYLOR'S TESTIMONY

In their fourth issue, Appellants argue that the trial court abused its discretion in overruling their objection to Taylor's testimony from his report about "what another witness told him regarding a previous dog bite incident" and "what the victim/complainant told him about that incident." When an objection to evidence is properly made, the subsequent presentation of essentially the same evidence without objection waives any complaint regarding the admission of the evidence. *See Breof BNK Tex., L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 67 (Tex. App.–Houston [14th Dist.] 2012, no pet.). Here, although Appellants objected to the admission of Taylor's report on hearsay grounds, on appeal, they only challenge the testimony he gave based on his report and make no argument the trial court's admissibility of the report itself constituted an abuse of discretion. Thus, we conclude that Appellants cannot demonstrate harm resulting from the trial court's permitting Taylor's live testimony on this subject.

Furthermore, Appellants identify the harm stemming from Taylor's testimony as follows:

> This error by the Court constitutes reversable error because it was particularly egregious and harmful, as it was in direct contradiction on several points to the testimony of Cheryl Jackson, damaging her credibility. The hearsay statement was that the victim/complainant was bitten on her own property adjacent to the Appellants' Property and that the dog came on her property "dragging a chain." In contrast, Cheryl Jackson testified that she had the dog chained after the victim/complainant was bitten.

We cannot conclude, without more, that the judgment "turns on" the admission of this testimony and the manner in which it contradicts Jackson's testimony. *See Alvarado*, 897 S.W.2d at 753–54. In considering Jackson's testimony, the jury was subjected to other contradictions, including one she made during her direct examination versus later, cross examination regarding whether she even fed the dogs she kept on her property for a period of months. Thus, if the jury determined that Jackson lacked credibility, it did not do so as a result of Taylor's testimony alone. Therefore, we hold that assuming the trial court abused its discretion in allowing this portion of Taylor's testimony, Appellants were not harmed by its admission. Appellants' fourth issue is overruled.

## MOTION FOR MISTRIAL

In their fifth issue, Appellants argue that the trial court abused its discretion in overruling their motion for mistrial made after a juror took a vacation in the midst of jury deliberations. At oral argument of this case, Appellants conceded that the issue is without merit. *See Interest of J.G.*, 592 S.W.3d 506, 507 (Tex. App.–Waco 2019, no pet.) (sustaining appellate issue without analyzing issue; court of appeals treated party's concession as waiver of issue on appeal). Accordingly, because Appellants have withdrawn their fifth issue, it is overruled.

## DISPOSITION

We have sustained Appellants' second issue in part to the extent that it relates to Harmon's liability for negligence. Having done so, we *reverse* the trial court's judgment as to Harmon's liability for negligence and *render* a take-nothing judgment against Johnson on that cause of action as to Harmon. Having overruled the remainder of Appellants' second issue, as well as their first, third, fourth, and fifth issues, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered March 13, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 13, 2024**

**NO. 12-22-00297-CV**

**CHERYL JACKSON AND JOHN HARMON,**
Appellants
V.
**MEGAN JOHNSON,**
Appellee

Appeal from the County Court at Law No. 2
of Smith County, Texas (Tr.Ct.No. 71235-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was error in the judgment as entered by the court below and that same should be affirmed in part and reversed and rendered in part.

It is ORDERED, ADJUDGED, and DECREED by this court that the trial court's judgment be **reversed** as to John Harmon's liability for negligence and judgment **rendered** that Megan Johnson take nothing on her negligence cause of action against John Harmon.

It is further ORDERED, ADJUDGED, and DECREED that the judgment of the court below is **affirmed** in all other respects.

It is further ORDERED that each party bear their own costs in this cause expended in this court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.

*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*